Mary Elizabeth DEAN et al., Plaintiffs-Appellants Cross-Appellees,

v.

Robert R. GLADNEY et al.,
Defendants-Appellees,

Roel G. Saldivar and Leroy Maddox, Defendants-Appellees Cross-Appellants.

No. 78–2632.

United States Court of Appeals,
Fifth Circuit.

July 24, 1980.

W. Thomas McKissick, Alvin, Tex., for Mary Elizabeth Dean et al.

Ogden Bass, Dist. Atty., Doyle W. Neighbours, Asst. Dist. Atty., A. B. Crowther, Jr., Angleton, Tex., for Brazoria County and Gladney.

John S. McEldowney, Galveston, Tex., for City of Clute, Tex.

Before JONES, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

On May 11, 1975, a confrontation erupted between beachgoers and police at Surfside Beach near Freeport, in Brazoria County, Texas. Numerous persons, including the appellants,[1] were arrested and jailed on charges of disorderly conduct or public intoxication by a large force of police officers summoned to quell the disturbance. As a result of this incident, various plaintiffs, including appellants, brought the instant lawsuit, predicated on the first, fourth, eighth and fourteenth amendments and 42 U.S.C. §§ 1981 et seq., against the law enforcement officers involved in the arrests, plus Brazoria County Sheriff Robert Gladney and his deputy, Paul Dugan,[2] Brazoria County, and the Cities of Angleton, Clute, and Freeport, Texas. Present appellees in this appeal consist of Brazoria County, Sheriff Gladney, former Brazoria County Deputy Sheriff Roel Saldivar, former Clute Police Officer Leroy Maddox, and the City of Clute.

We begin by briefly reciting the facts as set forth in the district court's memorandum opinion, 451 F.Supp. 1313 (D.C.Tex. 1978). On the weekend prior to the incident resulting in this lawsuit, Brazoria County Deputy Sheriff Mike Jones effected an arrest at Surfside Beach. As he and his prisoner were leaving the area, persons on the beach opened the rear door of the police vehicle and allowed the prisoner to escape. This incident made Sheriff Gladney and the members of his department apprehensive that more trouble might occur the following weekend. As a precaution, Sheriff Gladney assigned two deputies, rather than one, to the police vehicle that patrolled the beach. In addition, he instructed his deputies that, should any further trouble arise, "unlawful force would be met with lawful force."

During the afternoon hours of May 11, Deputies Saldivar and Jones observed two men involved in an altercation. They arrested and handcuffed both men and placed them in the rear of the police vehicle. Following these arrests, large numbers of swimmers began to crowd around the vehicle, prompting the officers, fearful of another confrontation, to radio for assistance, which promptly arrived.

Shortly after the arrival of the first assistance vehicle, appellant Hawkins was arrested, handcuffed, and placed in the back of the Saldivar-Jones vehicle with the two other prisoners. Other arrests followed within a short period of time. Despite the arrival of some 15 to 20 additional police vehicles and a "paddy wagon," Deputies Jones and Saldivar placed five additional handcuffed prisoners in the back seat of the vehicle with Hawkins and the two others, leaving the eight there for approximately one and one-half hours in stifling heat with the windows closed. When Hawkins was finally taken to the Brazoria County Jail in Angleton, he was unable to walk and was allowed to fall to the pavement while being removed from the police vehicle. He was booked and held during the evening hours until bond was made, and then released. Hawkins was never prosecuted, and the charges against him were ultimately dismissed.

After Hawkins' arrest, Jones and Saldivar and others who had been sent to assist them began indiscriminately arresting numerous citizens and subjecting the arrestees to unreasonable force by kicking them and striking them with billy clubs. During the early stages of this disturbance, a vehicle occupied by appellant Cowley, her husband, and her younger sister Lauri Walker, drove up to the scene. The car in front of theirs stalled and Mr. Cowley went to assist. While Ms. Walker and Mrs. Cowley waited in their vehicle, Saldivar walked up to the car, clapping his hand with a billy club.

---

1. Present appellants include Mary Elizabeth Dean, Mrs. Ronald Cowley, Mrs. Frank M. Polk, Jr., and George W. Hawkins.

2. Dugan died prior to trial, and his estate was not a party to this suit at the time of trial.

Both women were taking pictures of the alleged brutality. Saldivar leaned into the vehicle and informed them that if they did not stop taking pictures he would "smash the camera into their heads." Mr. Cowley returned to his vehicle and drove to a food stand on the fringe of the disturbance. While the Cowleys purchased food, Ms. Walker remained in the car taking pictures. At this point Officer Maddox and an unidentified officer approached the Cowley vehicle, took the camera away from Ms. Walker, removed and disposed of the film, and placed Ms. Walker under arrest. Observing these events, Mrs. Cowley ran back towards her sixteen-year-old sister to protest Ms. Walker's arrest, whereupon Mrs. Cowley, too, was arrested.

During this series of events, appellant Polk was arrested for protesting her husband's arrest.

Appellant Dean was a passenger in a vehicle carrying two other persons. She was waiting by a fishing pier for her friends. As she watched the disturbance, she became upset and began crying. An unidentified officer approached her and told her to leave the beach. She informed him that she could not leave until her two friends returned. As the officer turned to leave, Ms. Dean affected a silent military salute. Apparently perceiving this gesture, the officer arrested her.

All four women were placed in Officer Maddox' unventilated patrol car, where they were left for approximately one and one-half hours in the hot sun. During this period Mrs. Polk became distraught because she feared that her five-month-old baby had been left unattended on the beach. Over the women's protests, Maddox ultimately drove them to the Brazoria County Jail at excessive rates of speed. Upon arrival at the jail, the four women were placed in a small cell with approximately twenty male prisoners, some of whom were lying on the floor groaning from their injuries; some were urinating on the wall. When the women asked to use a bathroom, the jailers, who were Brazoria County deputy sheriffs, told them that they could urinate with the men. The women were later removed from the cell and placed in a janitor's closet, which also had no bathroom facilities. They were then searched by a police matron, who informed them that they could either pay a $27.50 fine or plead "not guilty" and post a bond of $300.00.

Subsequently, appellants and other arrestees brought this lawsuit. Following the presentation of evidence, the case was submitted to the jury. With respect to appellant Hawkins, the jury found that probable cause existed for his arrest, which was made without illegal force, but that Saldivar and Jones,[3] acting without good faith, had subjected him to cruel and unusual punishment; accordingly, it awarded him compensatory damages of $3,300.00. Regarding appellant Polk, the jury found that probable cause existed for her arrest, which was made without illegal force, but that unknown officers, acting without good faith, had subjected her to cruel and unusual punishment, necessitating an award of compensatory damages in the amount of $1,000.00. The jury found that appellant Dean had been arrested without probable cause, in retaliation for exercising her protected first amendment rights, by unknown officers acting with "malice, ill will and conscious disregard of her rights" and had been subjected to cruel and unusual punishment. It awarded her compensatory damages of $2,600.00 for her injuries and punitive damages of $1,000.00. Finally, the jury determined that appellant Cowley had been arrested by Officer Maddox without probable cause, in retaliation for her exercise of protected first amendment rights, and subjected to cruel and unusual punishment, meriting compensatory damages of $4,000.00 and punitive damages of $1,000.00.

In addition to those facts established by the jury findings, the district court found, as a matter of law, that Officer Maddox

---

3. Deputy Jones was a witness at trial, but was not made a defendant in this suit.

and Deputy Saldivar were, "in light of the jury verdict, joint tort-feasors whose torts proximately caused the damages to plaintiffs Polk, Cowley and Dean."[4] Accordingly, the court entered judgments in the amounts of $1,000.00, $3,600.00 and $4,000.00 in favor of appellants Polk, Dean and Cowley, respectively, against appellees Saldivar and Maddox.[5] The court further determined that there was no evidence adduced at trial that Sheriff Gladney was negligent in the selection of his deputies, that he had any personal knowledge of the events at the jail on the afternoon of May 11, or that he personally ratified the acts of his deputies that day.[6] Thus, the court dismissed the cause of action against Sheriff Gladney with prejudice.[7] Moreover, the district court held that liability could not be imposed on Brazoria County or the Cities of Angleton, Clute, and Freeport, Texas, "because of the doctrine of sovereign immunity" and therefore dismissed plaintiffs' causes of action against those entities with prejudice. Finally,[8] after considering the factors set forth in *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977), the district court awarded appellants' counsel attorney fees totalling $8,445[9] against appellees Saldivar and Maddox.

Following the denial of Saldivar's and Maddox' motion for a new trial, appellants filed a notice of appeal, alleging essentially three grounds of error: (1) failure to hold the county and the municipalities liable for damages to plaintiffs for first and eighth amendment violations committed by their employees; (2) failure to impose liability upon the county and municipalities for attorneys' fees incurred by appellants in the trial and appeal of the instant case pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988; and (3) failure to consider whether the attorneys' fees were fixed or contingent as required by *Rainey, supra*, in determining the amount of attorneys' fees awarded against Deputy Saldivar and Officer Maddox pursuant to section 1988. Saldivar cross appeals, charging that the district court erred in holding him jointly and severally liable with Officer Maddox for the damages awarded appellants Polk, Dean, and Cowley. We consider the appellants' and cross appellant's contentions seriatim.

### Respondeat Superior Liability

■ The district court held that it could not impose liability on the county or the municipalities for the acts of their employees on appellants' implied cause of action under the Constitution, predicated on *Bivens v. Six Unknown Named Federal Nar-*

---

4. The court also found that Deputy Dugan, who was a principal assistant of Sheriff Gladney and the officer in charge of the police activities on the beach on the afternoon of May 11, other unknown police officers who participated in the activities relating to appellants, and the Brazoria County deputy sheriffs who were in charge of the jail that afternoon were, as a matter of law, joint tortfeasors with Saldivar and Maddox.

5. The court also awarded appellant Cowley $1,000.00 in exemplary damages against Officer Maddox alone. With respect to appellant Hawkins, the district court entered judgment in his favor in the amount of $3,300.00 in damages against Saldivar alone. These awards are not at issue on appeal.

6. The court also found that there was no evidence to show that any of the established procedures at the jail was responsible for the treatment of the plaintiffs.

7. The dismissal of the cause of action against Sheriff Gladney has not been appealed. We note, however, that on the facts as found by the district court, dismissal was proper. *See Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979).

8. Only those aspects of the district court's memorandum opinion and final judgment that are relevant to this appeal are discussed in our opinion. We neither recount nor discuss other facets of the action below.

9. Of that sum, $6,535 was awarded to appellants' lead counsel, W. Thomas McKissick, and $1,910 to appellants' co-counsel, Edward L. Sargologos.

cotics Agents,[10] or on their section 1983 claim "because of the doctrine of sovereign immunity." Only the *Bivens* claim is before us on appeal.[11] The district court correctly noted that "*Bivens* establishes a cause of action against an individual federal officer if the federal officer violated the plaintiff's constitutional rights and such violation is a proximate cause of damages." He observed, however, that "*Bivens* leaves intact the doctrine of sovereign immunity."[12] We agree with the district court that *Bivens* does not sanction the imposition of, and should not be read to impose, respondeat superior liability on a municipality or a county for the acts of its employees. Our conclusion here gains support from the reasoning of decisions in six of our sister circuits that have considered the question before us. *See Jones v. City of Memphis,* 586 F.2d 622 (6th Cir. 1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1230, 59 L.Ed.2d 464 (1979); *Cale v. City of Covington,* 586 F.2d 311 (4th Cir. 1978); *Turpin v. Mailet,* 579 F.2d 152 (2d Cir.) (en banc), *vacated sub nom. City of West Haven v. Turpin,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978), *modified on remand,* 591 F.2d 426 (2d Cir. 1979) (en banc); *Nix v. Sweeney,* 573 F.2d 998 (8th Cir. 1978); *Jamison v. McCurrie,* 565 F.2d 483 (7th Cir. 1977); *Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977). *But see Dellums v. Powell,* 566 F.2d 216 (D.C.Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3147, 57 L.Ed.2d 1161 (1978).

In *Bivens* the Supreme Court permitted individuals whose fourth amendment rights had been violated by federal agents to bring a claim for monetary damages against those agents directly under the fourth amendment. Respondeat superior liability was not at issue in *Bivens*; consequently, the majority opinion did not broach that subject. Nothing in *Bivens,* as we read it, supports the imposition of respondeat superior liability. In fact, as the district court below noted, both the concurring and dissenting opinions in *Bivens* clearly indicate that the doctrine of sovereign immunity *precluded* the plaintiffs in *Bivens* from recovering against the government for the tortious conduct of its agents, even though such recovery might be desirable as a matter of policy. *See* n.12, *supra.* Because *Bivens* imposed liability only on those actors who were culpable, "to impose liability on a municipality under the theory of *respondeat superior* would be 'fundamentally inconsistent with the import of *Bivens.'*" *Jones v. City of Memphis,* 586 F.2d at 625 (quoting *Turpin v. Mailet,* 579 F.2d at 166: "Since the *sine qua non* of *Bivens* is the imposition of liability upon those actors who can meaningfully be termed 'culpable,' it is inappropriate to permit a recovery of damages from those who, by any standard, are innocent of wrongdoing."). We agree with the First Circuit that, while respondeat superior liability might be sound as a matter of policy, "the Court's methodology [in *Bivens*] belies any claim that *Bivens* should be understood as recognizing sweeping federal judicial power to create damages reme-

10. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

11. Although appellants do not raise their § 1983 claim on appeal, we note that *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), decided by the Supreme Court after the district court's opinion, controls this claim. In *Monell* the Supreme Court held that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691, 98 S.Ct. at 2036. Thus, the district court's dismissal of appellants' § 1983 claim was correct.

12. In particular, the district court relied on Mr. Justice Harlan's statement in concurrence that "[h]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit." 403 U.S. at 410, 91 S.Ct. at 2011–2012 (Harlan, J., concurring). The court also quoted extensively from Chief Justice Burger's dissent, which concluded that "Congress should develop an administrative or quasi-judicial remedy against the government itself to afford compensation and restitution for persons whose Fourth Amendment rights have been violated. The venerable doctrine of respondeat superior in our tort law provides and entirely appropriate conceptual basis for this remedy." *Id.* at 422, 91 S.Ct. at 2017 (Burger, C. J., dissenting).

dies to vindicate constitutional rights." *Kostka v. Hogg*, 560 F.2d at 42.

Matters of fiscal policy also counsel against extending *Bivens* to include suits based upon respondeat superior liability. In establishing a direct cause of action against federal agents for their own tortious conduct, the Supreme Court in *Bivens* was not confronted with a question of federal fiscal policy. *See Bivens*, 403 U.S. at 396, 91 S.Ct. at 2004. In contrast, however, where a suit is brought against a county or municipality based on the principle of respondeat superior, state and local fiscal policies are implicated, since the only source for the satisfaction of a judgment against either of those entities is the taxpaying public. *See Cale v. City of Covington*, 586 F.2d at 317; *Nix v. Sweeney*, 573 F.2d at 1008 (the court balanced "the uncertain benefits of the respondeat superior doctrine against the certain encroachment on limited local government revenues").

We are also persuaded by the Supreme Court's opinion in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that we ought not hold a municipality or county liable in a *Bivens*-type action on the principle of respondeat superior. In *Monell*, the Supreme Court held that local governing bodies could "be sued directly under section 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2036. However, the Court concluded that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under section 1983 on a respondeat superior theory." *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original). We are in accord with the Sixth Circuit's holding that "[i]t would be incongruous to hold that the doctrine of *respondeat superior* can be invoked against a municipal corporation in an action under 28 U.S.C. § 1331 [a *Bivens*-type action] when the doctrine has no application in an action under 42 U.S.C. § 1983." *Jones v. City of Memphis*, 586 F.2d at 625. Prior to *Bivens*, Congress had not created a cause of action for intentional violations of constitutional rights by federal officers, although it had created such a remedy in section 1983 against officials and employees acting "under color of state law." The effect of *Bivens* was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous to the section 1983 action against state officials. Denying respondeat superior liability in an implied cause of action under the Constitution is therefore consistent with the rejection of such liability in the context of section 1983.[13] To impose liability on the basis of respondeat superior in a *Bivens*-type action against a local governmental entity would, in effect, permit appellants to circumvent the restrictions imposed in *Monell* on a section 1983 claim.[14] Although the standards of liability under

---

**13.** As the Second Circuit noted in *Turpin v. Mailet*, 579 F.2d at 167:

> In rejecting *respondeat superior*, we have created a harmonious legislative and judicial scheme for the enforcement of the fourteenth amendment, and thereby adhere to the teaching of *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that implied remedies must, in nature and scope, be "consistent" with the legislative enactments already governing an area.

*Turpin* was vacated by the Supreme Court and remanded for reconsideration in light of *Monell. See City of West Haven v. Turpin*, 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978). It is thus of no binding force and effect, and we cite it only for its reasoning, recognizing that the respondeat superior issue was not reached on remand. *See Turpin v. Mailet*, 591 F.2d 426 (2d Cir. 1979) (en banc).

**14.** In the recent case of *Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381 (5th Cir. 1980) (per curiam), we considered the relationship between a *Bivens*-type action and a claim under § 1983:

> Although there have been a few notable exceptions, *see e. g., Davis v. Passman*, 422 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

section 1983 are not necessarily applicable to constitutional claims in a *Bivens*-type action, we are reluctant to extend the scope of municipal liability in the face of the Supreme Court's clear pronouncement in *Monell* and in the absence of affirmative action by Congress to impose respondeat superior liability on municipalities in either context.[15]

For all of the above reasons, we affirm the district court's dismissal of appellants' cause of action against Brazoria County and the City of Clute.

### Attorneys' Fees Against the City and County

■ Appellants also seek to have attorneys' fees assessed against the City of Clute and Brazoria County, at both the trial and the appellate levels.

The Civil Rights Attorney's Fees Awards Act of 1976, as codified at 42 U.S.C. § 1988, permits the district court, in its discretion, to award attorneys' fees to a "prevailing party" as part of the costs of the suit in actions brought pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, or 1986, if the case was pending at the time that the Act became law. *See Escamilla v. Santos*, 591 F.2d 1086, 1088 (5th Cir. 1979); *Morrow v. Dillard*, 580 F.2d 1284, 1297–1300 (5th Cir. 1978). The eleventh amendment is no longer a bar to such an award. *See Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Morrow v. Dillard*, 580 F.2d at 1298–1300.

The district court awarded appellants attorneys' fees against Saldivar and Maddox, individually, but refused to assess any fees against Brazoria County or the City of Clute. Its judgment may be overturned only if it has committed an abuse of discretion. *Id.* at 1300. Appellants have cited no authority for the proposition that attorneys' fees may be awarded against parties prop-

---

(1971), the federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution. Our reluctance stems from many concerns, not the least of which is our awareness that the framers of the Constitution saw fit to entrust the job of legislating to the Congress. The results in *Bivens* and *Passman* were necessitated primarily by the absence of alternative remedies. In each case, there simply was no other means of seeking redress for flagrant violations of the plaintiff's constitutional rights. With respect to the instant case, we note that Congress has provided a means of seeking relief against state officials who violate the Constitution. In pertinent part, 42 U.S.C.A. § 1983 states that any person, acting under color of state law, who deprives a United States citizen "of any rights, privileges, or immunities secured by the Constitution" shall be liable to such citizen.

*Id.* at 382–83. Plaintiffs there had failed to bring a § 1983 claim, and there was no reason to assume that a § 1983 claim would have been unavailing to them; hence, we affirmed the district court's dismissal of plaintiffs' implied cause of action. In the instant case, however, appellants *did* bring a § 1983 claim, based on respondeat superior, which is effectively foreclosed by *Monell*. Thus, it is at least arguable that a *Bivens*-type action is appropriate here even though it was not in *Hearth*.

15. We are aware that several commentators have written in support of imposing respondeat superior liability in a *Bivens*-type action. *See* Note, *Damage Remedies Against Municipalities for Constitutional Violations*, 89 Harv.L.Rev. 922 (1976); Hundt, *Suing Municipalities Directly under the Fourteenth Amendment*, 70 Nw.U. L.Rev. 770, 780–82 (1975); Note, *A Federal Cause of Action Against a Municipality for Fourth Amendment Violations by its Agents*, 42 Geo.Wash.L.Rev. 850, 853, 861 (1974). Each of these articles suggests that *Bivens* does not preclude respondeat superior liability; in fact, each argues that the imposition of such liability would further the interest served in *Bivens*. *See also* Comment, *Section 1983 Municipal Liability and the Doctrine of Respondeat Superior*, 46 U.Chi.L.Rev. 935, 952 n. 79 (1979). We also recognize that the absence of respondeat superior liability will foreclose some victims of police misconduct from their only effective opportunity to actually secure monetary compensation for their damages; they will be forced to seek recovery against individual law enforcement officers, who are likely to be penurious, instead of a county or municipality with its "deep pocket." Nevertheless, we refrain from extending liability to a county or municipality on the basis of respondeat superior in a *Bivens*-type action. We are convinced that such action, if it is to be taken, is more properly left to the Congress or the Supreme Court.

erly dismissed from the action merely because they were "prevailing parties" with respect to other parties in the suit. Indeed, an award against Brazoria County and the City of Clute under the circumstances of this case would turn the meaning of "prevailing party" on its head, since the district court expressly found, as a matter of law, that neither entity was liable to the appellants. The failure to award attorneys' fees against Brazoria County and the City of Clute was proper.[16]

### The Contingency Fee Factor

■ Appellants next complain of the district court's failure to consider the contingency fee factor in determining the amount to be awarded as attorneys' fees. The district court, in its opinion, set forth a step-by-step analysis of all the factors to be considered in such a determination as required by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See also Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977). With respect to the contingency fee factor, the court found: "As stated previously, both attorneys asserted that they took this case without expectation of remuneration. Accordingly, the factor of whether the fee is contingent or fixed is not applicable." Appellants do not assert that this finding is clearly erroneous under Fed.R.Civ.P. 52(a); instead, they point out that attorneys' fees had been requested from the beginning of the lawsuit, which was prior to the passage of the Civil Rights Attorney's Fees Awards Act of 1976. They assert no prejudice that they have suffered as a result of the district court's "oversight."

Consideration of all the *Johnson* factors is mandatory. *See Norwood v. Harrison*, 581 F.2d 518, 520 (5th Cir. 1978). However, the district court *did consider* all of the *Johnson* factors but found that circumstances rendered the contingency fee factor *inapplicable*. Because this finding has not been

shown to be clearly erroneous, there is no reversible error here.

### Joint and Several Liability

■ In his cross appeal, Deputy Saldivar complains about the trial judge's finding, as a matter of law, that he was a joint tortfeasor with Officer Maddox and is therefore liable to appellants Dean, Polk, and Cowley for the full amount of their damages. In light of the factual findings made below and the case law precedents to which we have been cited, we reverse the finding of joint liability. Accordingly, we remand this case to the district court for an allocation of the burden of appellants' attorneys' fees between Saldivar and Maddox.

In its opinion the district court characterized *Nesmith v. Alford*, 318 F.2d 110 (5th Cir. 1963), as holding that "all officers who participate in an illegal arrest and detention are jointly and severally liable as joint tort feasors if they participated in any of the actions in connection with the illegal arrest and detention." In our view, *Nesmith*, cannot be read so broadly. In that case we noted that the three police officer defendants had acted as one:

> Although there was no prior plan devised to bring about the arrest and imprisonment of the plaintiffs, each one of the three had a substantial role in bringing about the results. This was an instance of the typical "chain of command," Sullivan indicating to Ruppenthal that the Plaintiffs should be removed from the cafe, Ruppenthal giving the authoritative commands constituting the arrest, and Alford providing the essential transportation at the direction of Ruppenthal. Their actions throughout the whole sequence of events are so intertwined and interlocking that these Defendants must fall together.

*Id.* at 119. In the instant case the actions of Deputy Saldivar and Officer Maddox

---

**16.** To the extent that cross appellants Saldivar and Maddox attack the attorneys' fee award

against them, no abuse of discretion has been shown.

cannot be viewed as a "chain of command"; nor were their actions so "intertwined and interlocking" that liability cannot be apportioned between them. The jury made specific findings with respect to the arrest and detention of each of the appellants,[17] and the judge made additional findings concerning Officer Maddox' involvement.[18] These findings indicate that Officer Maddox was at least in part responsible [19] for the damages suffered by appellants Dean, Polk, and Cowley.[20] He may thus be held liable for the damages these appellants suffered. On the other hand, there is no evidence whatsoever linking Deputy Saldivar to the arrest or detention of any appellant other than George Hawkins, for whose damages Deputy Saldivar admits liability. To hold Saldivar liable for Officer Maddox' actions without any indication that he was involved in those actions would subject a police officer involved in a group arrest or confrontation to an intolerable burden—liability for any unconstitutional act committed by any one of his colleagues, regardless of his own lack of participation in those acts. Certainly, there are instances, such as the "chain of command" situation in *Nesmith*, in which imposing liability for another's actions is appropriate, but the instant case is not one of them.

Plaintiffs' counsel refer us to several cases that, they assert, support the imposition of joint and several liability in the instant case. The principal case cited is *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731 (1952), which established the theory of "indivisible injury":

> Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit.

*Id.* at 734. *See also Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973); *Bristol-Myers Co. v. Gonzales*, 548 S.W.2d 416, 427 (Tex.Civ.App.—Corpus Christi 1976) ("The general rule of contribution is that when two or more persons concur in producing a single indivisible injury, then such persons are jointly and severally liable although no common duty, common design, or concerted action exists."), *rev'd on other grounds*, 561 S.W.2d 801 (Tex. 1978). In our view, however, the "indivisible injury" theory is inapposite here, because the injuries to the various appellants are in no sense indivisible. Instead, they are personal, individual, and discrete. Moreover, each *can* be apportioned with reasonable certainty to either Saldivar or Maddox, as our discussion above makes clear. We thus conclude that the district court erred in finding as a matter of law that Saldivar was a joint tortfeasor and reverse the district court's judgment that Saldivar is jointly and severally liable for the damages of appellants Dean, Polk and Cowley.

17. *See* pp. 1333–1334, *supra.*

18. The judge found that:

Officer Leroy Maddox knowingly participated in the wrongful activities with reference to Mary Elizabeth Dean, Mrs. Ronald Cowley and Mrs. Frank Polk because he actively participated in the arrest of Mrs. Cowley, drove the vehicle which took Mrs. Cowley, Mrs. Polk and Ms. Dean to the Brazoria County jail, *and delivered them to the jail* where they were subjected to the additional abuse which the jury has found to constitute cruel and unusual punishment.

19. We are of course aware that other unidentified officers were implicated in the arrest and detention of appellants Dean and Polk. However, the liability of those officers and the liability of Officer Maddox for their actions are not before us on appeal. Officer Maddox' liability for the damages of these appellants is unaffected by our decision today.

20. In a single sentence in the appellees' brief, Saldivar and Maddox appear to contest the sufficiency of the evidence to support certain of the jury's factual findings. After reviewing the record, we find the evidence sufficient to support the jury's determinations.

■ Having reversed Saldivar's liability to these appellants, we remand the issue of attorneys' fees to the district court for reconsideration. The court awarded plaintiffs' attorneys fees in the amount of $8,445 against Saldivar and Maddox jointly. In light of our finding that Saldivar and Maddox are not joint tortfeasors, we believe the district court should apportion the amounts of attorneys' fees owed to appellants by each of the officers.

### Conclusion

In sum, we affirm the district court's dismissal of appellants' claims against Brazoria County and the City of Clute; we find no abuse of discretion in the court's failure to award appellants attorneys' fees against the county and the city or in its handling of the contingency fee factor; we reverse its finding that Saldivar was a joint tortfeasor with Maddox; and we remand the issue of attorneys' fees for reconsideration.

AFFIRMED in part and REVERSED in part and REMANDED.