**Gerald C. BRUNER, Plaintiff-Appellee, Cross-Appellant,**

v.

**Wade DUNAWAY, et al., Defendants, Cross-Appellees,**

**James Bates, Gregory Taylor, Christian Castellaw, Defendants-Appellants.**

**Nos. 81–5096, 81–5097.**

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1982.

Decided Aug. 11, 1982.

Robert H. Watson, Jr., McCampbell & Young, John Norris, Taylor & Groover, Knoxville, Tenn., for defendants, cross-appellees.

Norbert J. Slovis, Locket, Slovis & Weaver, William S. Zwick, Knoxville, Tenn., for plaintiff-appellee, cross-appellant.

Before MERRITT and KRUPANSKY, Circuit Judges and CECIL, Senior Circuit Judge.

PER CURIAM.

This is an appeal and cross-appeal from the Eastern District of Tennessee wherein the plaintiff-appellee, cross-appellant, Gerald C. Bruner (hereinafter referred to as plaintiff or Bruner) asserts as error the district court's grant of a new trial to defendants after a jury verdict for the plaintiff. The defendants, cross-appellees are James Bates (Bates), Gregory Taylor (Taylor), Wade Dunaway (Dunaway), James Humphrey (Humphrey), Richard Ingram

(Ingram), Steve Tinder (Tinder), Rick Fretz (Fretz) and Christian Castellaw (Castellaw). Bates, Taylor and Castellaw, having been found liable to the plaintiff after a second trial, are also appellants, contending that the trial judge erred in denying their alternative motions for judgment notwithstanding the verdict, new trial and remittitur.

The instant action arose out of incidents occurring on April 23, 1979. Plaintiff alleged in his initial complaint in the district court that, on that date, defendants Bates, Taylor, Dunaway, Humphrey, Ingram and Tinder, police officers for the City of Knoxville, Tennessee, defendant Fretz, a reserve police officer for that municipality, and defendant Castellaw, an explorer boy scout acting as a reserve police officer, deprived him of rights secured under the Constitution by subjecting him to severe beatings while in the custody of said officers. The action was instituted pursuant to 42 U.S.C. § 1983.

Plaintiff testified at the first trial that he was asleep in his automobile, which was parked adjacent to a school building, when Tinder woke him and requested that he exit the vehicle. Bruner testified that Tinder then began striking him with a flashlight or club and that, out of fear for his personal safety, he ran from the scene.

Thereafter, according to plaintiff's testimony, he stopped briefly at the home of Arthur Copeland (Copeland) erroneously believing it to be the residence of an acquaintance. After leaving Copeland's residence, Bruner fled into an alley where he was confronted by defendant Castellaw and struck on the head by an unidentified individual.[1] Thereafter Bruner stated that he was repeatedly struck and kicked by other unidentified persons and he was dragged down the alley. Plaintiff was then placed into an ambulance and taken to the hospital for medical treatment.

The defendants each admitted their presence at various stages of the incident but, with the exception of Tinder and Castellaw,

flatly denied striking the plaintiff in any manner.

Tinder testified that, while on patrol, he found Bruner asleep in an automobile parked behind a school building. Tinder ordered Bruner out of the automobile and began to frisk him. Bruner thereupon assaulted Tinder provoking the officer to strike Bruner with his nightstick, after which Bruner pushed the officer to the ground and fled the scene.

Castellaw testified that he was in the company of officers Bates and Taylor when he heard Tinder's call for help on the police radio. Upon receiving the call, Castellaw and the two officers initiated a search of the area and, after discovering the plaintiff, gave chase. Castellaw encountered Bruner in an alley where, according to Castellaw, Bruner attacked him and Castellaw struck Bruner in the side of the head with his flashlight.

Taylor testified that when he arrived in the alley Castellaw and Bruner were engaged in a struggle and he attempted to aid Castellaw in subduing the plaintiff. Bates, according to his testimony, arrived at the scene after Taylor and also sought to restrain Bruner.

Dunaway, Humphrey and Ingram each testified that they did not arrive at the scene until after Taylor, Bates and Castellaw had apprehended Bruner and that they (Dunaway, Humphrey, Ingram) did not assist or participate in subduing Bruner. Fretz testified that when he arrived at the alley Bruner was already handcuffed and that Fretz assisted other officers in restraining him. Fretz also testified that he assisted in placing Bruner in the ambulance.

The first trial resulted in a jury verdict for plaintiff against all defendants assessing damages in the amount of $300,000. The district court however, on motion of the defendants, set aside the jury verdict and ordered a new trial. The court's order provided, in pertinent part:

---

1. At the second trial Bruner specifically identified Castellaw as the individual striking the initial blow in the alley. This change in testimony, however, plays no part in the Court's decision.

The suit is based upon an alleged violation of 42 U.S.C. § 1983, commonly referred to as the Civil Rights Act. In order for any of the defendants to be held [liable] under that Act, personal involvement must be shown. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Sanberg v. Daley*, 306 F.Supp. 277 (N.D.Ill. 1969); *Salazar v. Dowd*, 256 F.Supp. 220, 223 (D.Colo.1966). The proof failed to show that defendants Bates, Taylor, Dunaway, Humphrey and Fretz were personally involved in injuring plaintiff.

The plaintiff's motion for reconsideration of the new trial order was denied and a new trial ensued.

At the close of the evidence of the second trial the district judge directed a verdict in favor of defendants Ingram, Dunaway and Humphrey. The City of Knoxville had previously been dismissed from the action. The jury returned a verdict in favor of plaintiff against defendants Bates, Taylor and Castellaw and assessed damages in the amount of $100,000. The jury found defendants Tinder and Fretz not liable to plaintiff.

Thereafter the defendants moved for a judgment notwithstanding the verdict or, alternatively, new trial or remittitur. The plaintiff moved for a judgment notwithstanding the verdict as to defendants Tinder and Dunaway, a new trial limited to the issue of damages or, in the alternative, additur. The district judge denied the parties' respective motions and this appeal ensued.

 With respect to the propriety of the district court's grant or denial of a new trial, the following principles, recently affirmed by this Circuit, govern this Court's review:

In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge must compare the opposing proofs and weigh the evidence (*Felton v. Spiro*, 78 F. 576 (6th Cir. 1897) Taft, J.), *General American Life Ins. Co. v. Central Nat'l Bank*, 136 F.2d 821 (6th Cir. 1943), and "it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence * * *."

\* \* \* \* \* \*

"[C]ourts are not free to reweigh the evidence and set aside the jury verdicts merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); *Werthan Bag Corp. v. Agnew*, 202 F.2d 119, 122 (6th Cir. 1953). Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.

\* \* \* \* \* \*

With respect to the applicable scope of review of a District Court decision granting or denying a new trial on the basis of the weight of the evidence, it is well settled that reversal may be predicated only upon an abuse of discretion.

*TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981), *quoting Duncan v. Duncan*, 377 F.2d 49, 52–53 (6th Cir. 1967), *cert. denied*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). Thus, the district court is afforded broad discretion in ruling on new trial motions. *See generally* 10 C. Wright and A. Miller, Federal Practice and Procedure § 2818 (1971).

In the instant case, as indicated, the district judge initially granted the new trial motion because, in his opinion, the evidence failed to demonstrate personal participation in the alleged wrongful behavior by officers Bates, Taylor, Dunaway and Fretz. Plaintiff presently contends that even assuming *arguendo* the evidence did not demonstrate personal involvement in the administering of the beatings, the inaction of the "non-participating" officers while Bruner was being assaulted subjects those officers to liability.

Plaintiff places primary reliance on *Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972). In

*Byrd* the plaintiff testified that he was beaten by unidentified officers in the backroom of a tavern. Although the plaintiff in *Byrd* was unable to specifically identify the individuals who struck him, he was able to identify three officers who were present at the time of the beating. The lower court directed a verdict for the defendants at the close of the evidence. On appeal the Seventh Circuit reversed, stating, in pertinent part:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to non-supervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate non-supervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace. Accordingly, the plaintiff was entitled to have his case against defendants Moran, Pfeiffer and Finnin submitted to the jury upon his having offered testimony that he was beaten by unknown officers in their presence.

Id. at 11. *See also, Putnam v. Gerloff,* 639 F.2d 415 (8th Cir. 1981) (deputy's failure to intervene in beating administered by sheriff is sufficient to subject him to liability). *Compare Dean v. Gladney,* 621 F.2d 1331 (5th Cir. 1980) (no evidence linking officer to arrests for which other officer held liable, therefore error for district court to hold that he was jointly and severally liable with other officer).

This Circuit has approved the holding of *Byrd* in *Smith v. Ross,* 482 F.2d 33 (6th Cir. 1973) (per curiam). In *Smith,* although the Court found that a deputy's acts were not the cause of the harm suffered by defendants, the Court stated:

We agree with appellants that a law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denies equal protection to persons legitimately exercising rights guaranteed them under state or federal law. Acts of omission are actionable in this context to the same extent as are acts of commission.

■ The foregoing authority clearly counsels that it is not necessary, in order to hold a police officer liable under § 1983, to demonstrate that the officer actively participated in striking a plaintiff. Had the district court's decision to grant a new trial rested solely on a contrary interpretation of the law plaintiff's position would be decidedly more persuasive.

However, as indicated, following the lower court's order granting a new trial, the plaintiff filed a motion to reconsider upon the pronouncements of *Byrd, supra.* Nevertheless the Court refused to vacate its earlier order, holding, in pertinent part:

> But assuming for purposes of argument that plaintiff is right in his contention that, under the circumstances of this case, mere presence while a wrong is being committed is sufficient to hold the one who is present liable under the Act, the proof in the present case fails to show that all of the defendants were present while the assault or other wrongs were being committed. Thus, even under plaintiff's theory, the proof was insufficient to hold those defendants who were not present and who did not participate in the assault liable in the present case.

■ The gist of this alternative holding is that the proof at trial, in the view of the trial judge, failed to establish presence of some defendants during the assault. This view is supported by the record.

At the first trial, as previously indicated, the plaintiff was unable to identify the officers present during the time he was beaten. Officers Dunaway and Ingram testified that they arrived at the scene *after* the plaintiff was subdued. The evidence

tended to show that the assault on Bruner occurred prior to the time plaintiff was subdued. Accordingly, and considering the fact that plaintiff's necessarily circumstantial evidence was directly contradicted on the whole, the trial court's grant of a new trial was not an abuse of discretion and therefore will not be disturbed on appeal.

■ Similarly, it was not error for the trial court to deny a judgment notwithstanding the verdict or new trial after the second trial. The evidence demonstrated that Bates, Taylor and Castellaw were involved in restraining Bruner and the jury was entitled to determine that, in so doing, they had employed excessive and unreasonable force.

■ With respect to the final issue, the defendants Bates, Taylor and Castellaw assert that the trial judge erred in denying their motion for remittitur on the $100,000 verdict. However, in general, courts are reluctant to overturn jury verdicts on the grounds of excessive or inadequate damages. *Cross v. Thomson*, 298 F.2d 186 (6th Cir. 1962). In light of the medical evidence adduced at trial indicating that Bruner suffered a severe skull fracture the night of the incident which permanently diminished his intellectual capacity and that Bruner presently has "post-traumatic epilepsy" requiring preventive medication, the facts of this case clearly do not warrant interference with the jury's award of damages.

In accordance with the foregoing, the judgment of the district court is hereby AFFIRMED.