**Maurice ARMSTER, Plaintiff,**

v.

**CITY OF RIVERSIDE, et al.,
Defendants.**

**No. CV 83-7646 RG (Mcx).**

United States District Court,
C.D. California,
Los Angeles Division.

May 1, 1985.

Stephen Yagman, Yagman & Yagman, Los Angeles, Cal., for plaintiff.

John M. Porter, Roberts & Morgan, Riverside, Cal., for defendants.

## MEMORANDUM

GADBOIS, District Judge.

On July 5, 1983, at approximately 8:45 p.m., the plaintiff, Maurice Armster, entered a women's restroom in an office complex in Riverside, California. Armster, who worked as a janitor at the office complex, allegedly entered the women's restroom to perform his janitorial duties. While Armster was in the restroom former defendant Kathleen Keast emerged from one of the lavatory stalls and exited the restroom. Kathleen Keast, evidently surprised at encountering a male in the women's restroom, alerted former defendant Paul Keast, her husband, and defendant Sam Spiegel, of Armster's presence in the restroom. Paul Keast is a retired Riverside, California police officer and defendant Sam Spiegal is a Corona, California police officer who was off duty at the time of the incident.

Armster evidently encountered Paul Keast and defendant Spiegel outside the restroom. At this point, defendants M.N. Smail and "Adolf" Beecher, on duty Riverside, California police officers, arrived at the scene allegedly to investigate a report that an off-duty police officer was detaining a suspicious subject at that location. Armster entered another restroom and was pursued by Paul Keast and Spiegel. Smail and Beecher, still outside this second restroom, heard a struggle taking place in the restroom and entered the restroom. Armster alleges that Smail and Beecher stood by as Paul Keast and Spiegel beat him up. Smail and Beecher concede that there was a struggle in progress when they entered the restroom but contend that Spiegel was trying to subdue Armster in order to place him under citizen's arrest. Smail put his handcuffs on Armster and the struggle quickly ceased. Armster was kept handcuffed for approximately forty-five minutes, after which he was released.

As a result of this incident, Armster filed this action under the Civil Rights Act of 1871, 42 U.S.C. §§ 1981, 1983, 1985(3) (1984), against Smail, Beecher, Spiegel, Paul and Kathleen Keast, and the city of Riverside. The Keasts were dismissed as defendants in this action on March 13, 1985. In this motion Smail and Beecher move for summary judgment pursuant to Federal Rule of Civil Procedure 56, Fed.R. Civ.P. 56, on all the plaintiff's claims against them.

ANALYSIS:

## THE PLAINTIFF'S SECTION 1985 CLAIM.

In addition to his claim under 42 U.S.C. section 1983 (1984), which is discussed below, the plaintiff, Maurice Armster, alleges that the defendants engaged in a conspiracy to deprive him of certain constitutional rights in violation of 42 U.S.C. section 1985 (1984). This court should assume that Armster is alleging a violation of section 1985(3) because the other subsections of section 1985 are inapplicable to the case at hand. *See Miller v. Indiana Hospital,* 562 F.Supp. 1259, 1281–83 (W.D.Pa.1983). Section 1985(3) provides a cause of action against persons who "conspire ..., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

■ The Supreme Court has made clear that section 1985(3) applies only when there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 101, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971). Section

1985(3) does not require proof of a specific intent to deprive a person of a federal right made definite by decision or other rule of law. *Griffin*, 403 U.S. at 102 n. 10, 91 S.Ct. at 1798 n. 10. "Section 1985(3) ... contains no specific requirement of 'willfulness' .... The motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus." *Id.* at 102 n. 10, 91 S.Ct. at 1798 n. 10.

It is true that in the case at hand the plaintiff is black and all the defendants are white. Beyond bringing this fact to the court's attention, however, the plaintiff presents absolutely no evidence supporting his allegation that the defendants acted out of racial, or otherwise class-based, invidiously discriminatory animus. The lack of evidence supporting this allegation is not surprising in light of the fact that class-based invidiously discriminatory animus is a purely subjective state of mind tangible evidence of which is difficult to produce. Nevertheless, as another federal district court has noted, "... just because racial animus is important ... that does not suspend the application of Rule 56." *Smith v. Dallas County Board of Education*, 480 F.Supp. 1324, 1337 (S.D.Ala.1979); *see Carter v. Cuyler*, 415 F.Supp. 852, 857 (E.D. Pa.1976) (the allegation "I think that this conspiracy is based partly on racial animus" is a "conclusory allegation ... insufficient to establish a § 1985(3) claim"). Furthermore, defendants Smail and Beecher state in separate declarations that their actions were not "engaged in with evil motive or intent or with a negative racial motive or intent."

■ Because the plaintiff has presented no evidence that defendants Smail and Beecher acted out of racial, or otherwise class-based, invidiously discriminatory animus and these defendants have presented evidence to the contrary—albeit in the form of declarations—defendants Smail and Beecher's motion for summary judgment on the plaintiff's section 1985(3) claim is granted.

## II. THE PLAINTIFF'S SECTION 1983 CLAIMS.

In addition to their section 1985(3) claim against the defendants, the plaintiff also alleges a claim against the defendants under 42 U.S.C. section 1983 (1984). Section 1983 provides a cause of action against individuals who, while acting under color of state law, deprive others of federal rights, privileges, or immunities. *Id.* The plaintiff's section 1983 claim is based on two separate allegations: (1) that defendants Smail and Beecher stood by and watched while two white individuals (defendant Sam Spiegel and former defendant Paul Keast) beat up the plaintiff; and (2) that defendants Smail and Beecher unreasonably detained the plaintiff in violation of his fourth amendment rights.

Neither the United States Supreme Court nor the United States Court of Appeals for the Ninth Circuit has addressed the question of whether a section 1983 claim can be premised on an allegation that defendant police officers stood by while private citizens attacked or beat up another private citizen. In *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir.1983), the United States Court of Appeals for the Sixth Circuit held that a section 1983 claim may be premised on an allegation that a police officer stood by and watched while fellow police officers beat up the plaintiff. The Sixth Circuit accepted the plaintiff's argument that "even assuming *arguendo* the evidence did not demonstrate personal involvement in the administering of the beatings, the inaction of the 'nonparticipating' officers while [the plaintiff] was being assaulted subjects those officers to liability." *Id.* at 425; *see Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir.1972) ("We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."); *see also Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir.1981) ("We conclude although [the defendant] was a subordinate the evidence is sufficient to hold him jointly

liable [under § 1983] for failing to intervene if a fellow officer, albeit his superior, was using excessive force and otherwise was unlawfully punishing the prisoner.")

As noted above, Armster alleges that defendants Smail and Beecher, Riverside police officers, stood by and watched while defendant Spiegel and former defendant Paul Keast beat up the plaintiff. Defendants Smail and Beecher, on the other hand, contend that they did not stand by and watch while Armster was beaten up; instead, they contend that the struggle between Armster and the other defendants ended almost immediately upon their arrival at the scene and that their intervention was unnecessary.

Armster's declaration in opposition to the defendants' summary judgment motion does not entirely support his aforementioned allegation because Armster states that he was knocked unconscious before defendants Smail and Beecher were close enough to the scene to intervene and that he awoke only after he was handcuffed. However, in his declaration, Armster does state: "I asked defendants Smail and Beecher for assistance and asked them to tell Keast to take his foot off my backside. They failed to do so."

Furthermore, defendants Smail and Beecher's declarations, far from contradicting Armster's version of the incident, actually lend credence to his claim that they were present while he was being beaten by Spiegel and Keast. Smail states in his declaration:

As I arrived at the door, the two white male individuals, who were subsequently identified as Paul Keast and Samuel Spiegel, were struggling with the black individual, who was subsequently identified as Maurice Armster, and Mr. Keast and Mr. Spiegel were in the process of removing Mr. Armster from the restroom and placing him on the ground, at which time Mr. Spiegel indicated that he was placing Mr. Armster under arrest, and as Mr. Armster was still struggling, I applied my handcuffs to him, and shortly thereafter the struggle stopped.

Beecher makes a similar statement in his declaration.

■ Defendants Smail and Beecher's declarations reveal that they were present during a portion of the time that Armster was unconscious and they witnessed a struggle between Armster, Spiegel and Keast as well as Spiegel and Keast's act of placing Armster on the ground. Common sense suggests that the defendants' act of placing Armster on the ground probably was done forcefully. Thus the evidence before this court, when viewed in the light most favorable to Armster, is sufficient to create a genuine issue of material fact on the question of whether defendants Smail and Beecher stood by and failed to intercede while defendant Spiegel and former defendant Keast beat up Armster.

■ Finally, the defendants' attempt to distinguish the Sixth Circuit's decision in *Bruner* on the ground that in *Bruner* the plaintiff was beaten by police officers while in the case at hand the plaintiff was beaten by private citizens making a citizen's arrest is unpersuasive. With a few exceptions not relevant to the case at hand, a police officer has a duty to intercede to prevent an individual from being subjected to excessive, unlawful physical force regardless of who is applying the unlawful force to the individual. In fact, a police officer may be expected to intercede earlier in such a struggle when a private person is using possibly excessive force than when a fellow officer is using such force because police officers using force are presumed to know the limits of legally permissible force.

The second ground upon which Armster's section 1983 claim is based is his allegation that defendants Smail and Beecher unreasonably detained Armster in violation of his fourth amendment rights. As can be expected, the defendants argue that Armster was not unreasonably detained because his detention lasted only long enough for them to conduct an investigation and to conclude that there were no grounds upon which to book Armster.

■ It is clear that a section 1983 action can be predicated on a fourth amendment claim for false or illegal arrest. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Gonzales v. City of Peoria*, 722 F.2d 468 (9th Cir.1983).

■ The fourth amendment applies to seizures of the person, including brief investigatory stops. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). An investigatory field stop that constitutes only a limited intrusion on the personal security of the detainee and which is justified by substantial law enforcement interests may be made on less than probable cause, *Michigan v. Summers*, 452 U.S. 692, 699, 101 S.Ct. 2587, 2592, 69 L.Ed.2d 340 (1981), but the officers detaining the suspect must at least have a particularized and objective basis for suspecting the particular person stopped of criminal activity. *Cortez*, 449 U.S. at 417–18, 101 S.Ct. at 694–95.

■ The duration of an investigatory detention cannot be unreasonably long. As the Supreme Court stated in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983):

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the office's suspicion in a short period of time.

*Id.* at 500, 103 S.Ct. at 1325. However, as the Supreme Court made clear in a recent decision, *United States v. Sharpe*, —— U.S. ——, ——, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), there is not a "hard-and-fast time limit for a permissible" investigative detention. The *Sharpe* Court went on to state:

> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.... A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.

—— U.S. at ——, 105 S.Ct. at 1575.

■ If a detention does go beyond an investigative detention to constitute a *de facto* arrest, it must be based on probable cause. *Royer*, 460 U.S. at 498–99, 103 S.Ct. at 1324–25; *Dunaway v. New York*, 442 U.S. 200, 208–09, 99 S.Ct. 2248, 2254–55, 60 L.Ed.2d 824 (1979).

■ There is no evidence before this court that defendants Smail and Beecher had probable cause to detain Armster. According to the declarations of Smail and Beecher, they were dispatched to the scene of the incident to investigate a report of an off-duty police officer detaining a suspicious subject at that location. This description of the plaintiff certainly did not give the defendants probable cause to believe Armster had done anything illegal. Likewise, there is no evidence before this court suggesting that anything defendants Smail or Beecher saw or heard at the scene of the incident gave them probable cause to believe Armster had done anything wrong. The fact that defendant Spiegel and former defendant Keast told defendants Smail and Beecher that they were making a citizen's arrest of Armster should not be construed to constitute probable cause because there were no facts evidencing the validity of that arrest.

■ In fact, it seems possible that defendants Smail and Beecher did not even have a particularized and objective basis for suspecting Armster of criminal activity so as to justify an investigative detention. Whether such a basis existed constitutes a genuine issue of material fact precluding

summary judgment on the plaintiff's section 1983 claim.

Assuming *arguendo* that defendants Smail and Beecher did have a particularized and objective basis for suspecting Armster of criminal activity, these defendants still violated Armster's fourth amendment rights if their detention of Armster went beyond the permissible limitations of a valid investigation detention to constitute a *de facto* arrest. The declarations of Smail, Beecher, and Armster reveal that the detention of Armster lasted at least one-half hour and may have lasted over an hour. During this period Smail and Beecher conducted an investigation to determine whether Armster should be arrested formally. When Smail and Beecher concluded that grounds did not exist for a formal arrest, they released Armster.

 In determining whether defendants Smail and Beecher's detention of Armster went beyond the grounds of permissible detention made on less than probable cause, this court must consider: (1) whether defendants Smail and Beecher diligently pursued a means of investigation that was likely to confirm or dispel their suspicions of Armster quickly; (2) whether it was necessary to detain Armster during this period; and (3) whether defendants Smail and Beecher were acting in a swiftly developing situation so as to preclude this court from unrealistically second-guessing the legality of their actions. *See Sharpe,* —— U.S. at ——, 105 S.Ct. at 1575. These considerations involve factual issues not addressed by the parties. This court therefore must treat these factual issues as genuine issues of material fact that preclude summary judgment on Armster's section 1983 claim.

Because genuine issues of material fact still exist with respect to both of the allegations underlying Armster's section 1983 claim, *i.e.,* his allegation that defendants Smail and Beecher stood by and watched while others beat him up and that these defendants unlawfully detained him, defendants Smail and Beecher's motion for summary judgment on the plaintiff's section 1983 claim is denied.

**III. THE GOOD FAITH DEFENSE.**

 Defendants Smail and Beecher should be absolved of liability to the plaintiff if they acted in good faith during the incident in question. The test to determine whether a defendant may assert a "good faith" or "qualified immunity" defense is a purely objective one based on whether the conduct complained of violated " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Davis v. Scherer,* —— U.S. ——, ——, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "Whether the official may prevail in his qualified immunity defense depends upon the 'objective reasonableness of [his] conduct as measured by reference to clearly established law.' " *Id.*

 This court holds that the law is clear that police officers may not stand by and watch private citizens physically accost another private citizen if the officers can with reasonable safety stop the attack. Likewise, at the time of the incident in question the law was clear that police officers could not detain a suspect for a considerable length of time on less than probable cause unless such detention was necessary to permit the police to investigate whether the suspect had in fact been involved in criminal activity.

If defendants Smail and Beecher either: (1) stood by and watched while others beat up on Armster and could have but failed to safely end the attack; or (2) unreasonably detained Armster in violation of his fourth amendment rights, not only should the good faith defense be unavailable to these defendants, but they should be liable to Armster under section 1983. As the discussion above makes clear, however, there are genuine issues of material fact relating to these allegations underlying Armster's section 1983 claim, *i.e.,* whether defendants Smail and Beecher stood by and watched as Armster was beaten up and whether they unreasonably detained him. These genuine

issues of material fact preclude this court from ruling at this time on the availability to defendants Smail and Beecher of the good faith defense. Therefore, this court declines to rule at this time on the availability of this defense to these defendants.

## IV. PUNITIVE DAMAGES.

Punitive damages are appropriate in a section 1983 action where there is a showing of the defendants' evil motive or intent or their callous disregard for the federally protected rights of the plaintiff. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The genuine issues of material fact underlying Armster's section 1983 claim preclude this court from ruling at this time on his punitive damages claim. Therefore, the defendants' motion for summary judgment on this claim is denied.