**William C. STACKHOUSE, Jr., Plaintiff,**

v.

**Ronald J. MARKS, et al., Defendants.**

**No. 81–0807.**

United States District Court,
M.D. Pennsylvania.

April 23, 1982.

---

William C. Stackhouse, Jr., pro se.

Elizabeth Butler Metz, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, an inmate currently incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983. In his amended complaint, Stackhouse alleges that the defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to a serious medical need. On April 7, 1982 a pretrial conference was held. Pursuant to that conference, this action will be dismissed inasmuch as it is apparent that the defendants have exhibited anything but deliberate indifference.

## FACTS

The events leading up to the commencement of this lawsuit began at approximately 2:30 A.M. on May 18, 1981 when, according to the complaint, plaintiff had some type of seizure which caused him to fall out of the top bunk in which he was sleeping. As a result of this fall, Stackhouse allegedly sustained injuries to his hip, shoulder and lower back. It is the treatment of these injuries for which Stackhouse has sued.

It is unnecessary to deal with the allegations of the amended complaint paragraph by paragraph, for the medical records of the plaintiff were available at the pretrial conference. These records show that since May 18, 1981 when he fell out of his bunk, Stackhouse was seen by Drs. Meloy and Dunn, staff physicians at Huntingdon, a total of forty (40) times; by Dr. Jones or Dr. Maholick, both orthopedic consultants, five (5) times and by Dr. Feigeldor, a neurologist once.[1] The medical record also show that various medications and whirlpool treatments were prescribed for Stackhouse and various tests performed, including x-rays.[2]

■ This case is governed by the rule enunciated by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976):

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia, supra,* [428 U.S. 153] at 182–183, 96 S.Ct. [2909] at 2925 [49 L.Ed.2d 859] (joint opinion), proscribed by the Eighth Amendment.

429 U.S. at 104, 97 S.Ct. at 291. However, not every claim by a prisoner that he had not received adequate medical treatment states a violation of the Eighth Amendment. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 105–106, 97 S.Ct. at 292.

Applying these principles, the *Estelle* Court concluded that no cause of action had been stated:

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. They treated his back injury, high blood pressure, and heart problems. Gamble has

---

1. Plaintiff is also being treated by a psychiatrist at Huntingdon.

2. Subsequent to the commencement of this action, bone scans, EKG's and a nerve conduction study were performed.

disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." Response to Pet. for Cert. 4; see also Brief for Respondent at 19. The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. *Id.* at 17, 19. The Court of Appeals agreed, stating: "Certainly an x-ray of [Gamble's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." 516 F.2d [937] at 941 [ (CA5 1975) ]. But the question whether an x-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Id.* at 107, 97 S.Ct. at 292–93 (footnotes omitted).

██ The facts in this case closely parallel those in *Estelle.* As stated above, Stackhouse has been seen by medical personnel on over forty (40) occasions, given various types of medication and had x-rays taken. As demonstrated by his statements at the pretrial conference, plaintiff's complaint related to the type of treatment he received:

> The Court: Where is the deliberate indifference to a serious medical need when you filed this complaint?

Mr. Stackhouse:. First of all, I had seen the doctors, as you say, very many times. And the only thing that has come out of these meetings was prescribing medication. I was in severe pain. I'm in severe pain now. But they were not doing anything physically, or recommending, or as far as any type of therapy, or to this day Doctor Meloy has been treating me for this problem and he has not yet touched me once, but has prescribed me all these medications. He has never till this day touched me.

> The Court: Has Doctor Dunn ever touched you?

Mr. Stackhouse: Yes, sir

> The Court: How about Doctor Jones?

Mr. Stackhouse: Yes, sir

Transcript of Pretrial Conference, Document 72 of the Record, at p. 38. However, whether additional treatment should be prescribed is a medical judgment and not subject to challenge under 42 U.S.C. § 1983. *Estelle, supra,* 429 U.S. at 107, 97 S.Ct. at 292–93.

While Mr. Stackhouse was vehement, and perhaps convinced,[3] that the defendants have been deliberately indifferent to his medical needs, this court must conclude that it would be a waste of judicial resources to schedule this case for trial. Plaintiff was advised that the court would not schedule a trial date, empanel a jury and summon witnesses if a party's offer of proof was insufficient to warrant recovery or if the right to recovery was obvious from admitted facts. Moreover, plaintiff was informed as follows:

> The Court: Mr. Stackhouse, this is a pretrial conference that I have convened, and I will give you a brief explanation so you will understand what it is about.

---

**3.** Subsequent to the pretrial conference, this court received a letter from Mr. Stackhouse stating that he was intimidated during the pretrial conference because of the presence of three attorneys from the Attorney General's Office and that consequently he did not say all he wanted to say. First, the court would point out that Stackhouse's demeanor at the conference belies any claim of intimidation. Second,

the court warned plaintiff at the beginning of the conference that "it is in your best interest to set forth everything, don't hold anything back, because it will be too late to come in later and say well, I had something else I wanted to tell you but I didn't tell you at the time." Transcript of Pretrial Conference, Document 72 of the Record, at p. 3.

The Court has the authority to bring counsel and the parties together in advance of trial for a conference to consider any matters that might aid in the disposition of the case. And I think you should know what I am going to ask is, for you to indicate to me what your evidence will be in this case. And it is possible after hearing what your evidence will be, and what the Commonwealth's evidence, or at least the evidence of these defendants might be, that I might hold as a matter of law that you have no cause of action at all and dismiss the case; do you understand that?

Mr. Stackhouse: Yes, sir.

The Court: And at the same time if it is established that your Constitutional rights have been violated as a matter of law, then it is possible that I could award relief for you and against the defendants without a trial; do you understand what I am saying?

Mr. Stackhouse: Yes, sir.

Accordingly, the action will be dismissed.