Ronald D. VETETO, Plaintiff,

v.

H.G. MILLER, et al., Defendants.

Civ. No. 85–0965.

United States District Court,
M.D. Pennsylvania.

July 1, 1992.

Order Denying Reconsideration,
Sept. 18, 1992.

Ronald D. Veteto, pro se.

John A. Morano, Jr., U.S. Atty's Office, Scranton, PA, Stephen E. Heretick, Moody, Stroplé & Kloeppel, Ltd., Portsmouth, VA, for defendant.

## MEMORANDUM AND ORDER

CONABOY, Chief Judge.

This is a Bivens-type [1] civil rights action filed by Ronald D. Veteto, an inmate at the Federal Correctional Institution at Bradford, Pennsylvania ("McKean"). Veteto filed the complaint while he was incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania ("Lewisburg"), alleging principally that Lewisburg prison officials conspired to deny him an effective means of access to the courts while he was confined in the Lewisburg administrative detention unit for several months in 1985. The defendants are former Lewisburg Warden Harold G. Miller "and other named unidentified employees of the U.S. Bureau of Prisons."

This matter comes before the court on the defendants' motion to dismiss the second

---

**1.** *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

amended complaint and several motions filed by Veteto. For the following reasons, the motion to dismiss will be granted in part and denied in part. Veteto's motions will be denied, and this action will be terminated for the reasons stated below.

## Procedural History

This case has a lengthy procedural history, much of which is relevant to today's decision. Veteto filed the original complaint, styled as a "Complaint—Mandamus, Petition for Writ of Habeas Corpus", on July 11, 1985, naming then Lewisburg Warden Miller and other "John Doe" employees of the Federal Bureau of Prisons as defendants. Veteto claimed he was denied access to the courts by having writing materials, stationary and stamps withheld, as well as insufficient access to the prison law library during his stay in the Lewisburg administrative detention unit. Veteto also claimed he was denied meals, clean clothes, showers and recreation periods specifically prescribed by federal regulations and established Bureau of Prisons policy. He sought declaratory and injunctive relief, as well as money damages.

The court dismissed the case as frivolous on July 30, 1985 under 28 U.S.C. § 1915(d) because the complaint indicated that Veteto had not pursued an administrative resolution to the allegations in the complaint before seeking relief in the district court.[2] The Third Circuit subsequently vacated the order of dismissal, ruling it was error to dismiss the complaint on exhaustion grounds without service, answer, or a preliminary hearing on the exhaustion question. *Veteto v. Miller*, 794 F.2d 98, 100 (3d Cir.1986). The cause was remanded "to enable the plaintiff, if so minded, to amend his complaint so as to supply more specific facts on this subject and to enable the court to hold a preliminary hearing, if needed," to establish facts relevant to the exhaustion question. *Id.*

Upon remand, Veteto ignored two orders directing him to file an amended complaint demonstrating that he had exhausted administrative remedies and the court dismissed the case without prejudice on September 30, 1986. Almost two months later, Veteto filed a motion to reinstate the case, arguing that no effective administrative remedies remained available to him because the incidents complained of had occurred over a year ago and any administrative appeals would be dismissed as untimely as a matter of course. In an order dated November 21, 1986, the court granted Veteto's motion and ordered him to file an amended complaint complete in all respects.

Veteto, then incarcerated at the United States Penitentiary in Terre Haute, Indiana ("Terre Haute"), subsequently filed a document titled "Amended Complaint, Mandamus, and Petition for Writ of Habeas Corpus". Again, he named Warden Miller and "other named unidentified employees of the U.S. Bureau of Prisons" as defendants. The amended complaint raised essentially the same undetailed allegations as those in the original complaint—denial of access to the courts by having writing materials, stationary, stamps and personal legal materials withheld, as well as insufficient access to the prison law library. Veteto also claimed he was denied meals, clean clothes, showers and recreation. The most specific injury he alleged was that he was unable to "research or type" a brief in an Eleventh Circuit case because he was deprived of the proper resources.

**2.** The Bureau of Prisons has a multi-tier administrative remedy procedure whereby a federal prisoner may seek formal review of any aspect of his imprisonment. *See* 28 C.F.R. §§ 542.10–542.16 First, "[i]nmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy." *Id.* at § 542.13(a). Second, "[i]f an inmate is unable to informally resolve his complaint, he may file a formal written complaint, on the appropriate form, within fifteen (15) calendar days of the date on which the basis of the complaint oc-

curred." *Id.* at § 542.13(b). The Warden has fifteen (15) days in which to respond. *See id.* at § 542.14. If the inmate is not satisfied with the Warden's response, the response may be appealed (on the appropriate form) to the Regional Director within twenty (20) calendar days from the date of the Warden's response. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the General Counsel within thirty (30) calendar days from the date of the Regional Director's response. *Id.* at § 542.15.

Thereafter, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. On May 11, 1988, the court granted the defendants' motion as one for summary judgment because they submitted declarations and an *in camera* submission that refuted the substance of Veteto's allegations and Veteto failed to offer any evidence in support of his claims. On August 22, 1990, however, the Third Circuit vacated the judgment and remanded for further proceedings in light of Veteto's allegations that Terre Haute prison officials impeded the discovery process and prevented him from properly responding to the defendants' motion by denying him access to legal materials.

On September 14, 1990, the court issued an order directing Veteto to file a second amended complaint in conformity with the heightened pleadings standards required in civil rights cases within twenty days. Veteto, then incarcerated at the Federal Correctional Institution in Jessup, Georgia, filed a motion to stay all proceedings because his recent transfer left him without his legal materials. He also claimed he did not have access to the prison law library or writing materials. The court granted the request, and it was not until November 27, 1990 that Veteto filed a "Second Amended Complaint, Mandamus, and Petition for Writ of Habeas Corpus". Despite the court's instructions to file a more factually detailed complaint than he had in previous filings, the second amended complaint is a virtual carbon copy of the amended complaint Veteto filed in December, 1986.

The defendants subsequently filed a motion to dismiss, alleging insufficient service of process on the unidentified defendants, failure to prosecute, and failure to state a claim upon which relief can be granted. The defendants argued that Veteto failed to state a viable claim because the second amended complaint depicted nothing more than *respondeat superior* liability against Miller and no actual injury sufficient to support an access to the courts claim. *See Kershner v. Mazurkiewicz*, 670 F.2d 440, 445 (3d Cir. 1982). Veteto disregarded the legal elements of the defendants' argument, arguing

in opposition merely that the second amended complaint "states viable claims of constitutional violations upon which relief can be granted." Document 70 of record, page 1. The court denied the motion to dismiss inasmuch as it sought dismissal for insufficient service of process and failure to prosecute, but held the disposition of the motion for failure to state a claim in abeyance pending discovery.

When the parties filed several discovery motions, the court issued an order denying the motions and directing the parties to hold a discovery conference in person to resolve their differences. The discovery conference proceeded as ordered, and the parties attempted to continue with discovery without court intervention. After the parties filed a new series of discovery motions, however, the court directed that they file discovery status reports in an attempt to define the issues as clearly as possible.

The defendants' discovery status report indicated that Veteto served thirty-three sets of interrogatories upon corrections officers presently or formerly employed at Lewisburg, including defendant Miller, to which the interrogees responded. The defendants also served interrogatories on Veteto, which he answered. In addition, the defendants complied in part with various document requests, and produced, among other things, redacted portions of the log book used to record inmate visits to the administrative detention unit law library. They objected, however, to the production of some items on the ground that the requested information had nothing to do with Veteto's claims. Among the documents the defendants refused to produce are: (1) the full names, social security numbers, areas and dates of assignment and full facial pictures or photographs [3] of all persons employed at Lewisburg in 1985; (2) the titles and civil numbers of all actions taken against Lewisburg and its employees by inmates from 1983 through 1987; (3) copies of all administrative complaints and grievances taken against Lewisburg employees from 1983 through 1987; and (4) various prison manuals related to

---

**3.** Defense counsel eventually supplied Veteto with an indeterminate, though significant number of photographs of guards employed at Lewisburg in 1985.

training and procedure. *See* Documents 95 and 120 of record. The defendants report also indicated that they opposed Veteto's request to take the depositions of fifty-three past and present Lewisburg officials. They claimed that because over thirty of the proposed deponents had already answered interrogatories truthfully and demonstrated no knowledge of the constitutional violations Veteto alleged, depositions of those individuals would be needlessly repetitive. The defendants objected to the depositions of the officials who had not been interrogated on the ground that their depositions would be premature until they demonstrated relevant information through answers to interrogatories.

Veteto also submitted a status report, as well as a motion for recusal[4] and a second motion "to provide access to case law decisions" or, alternatively for appointment of counsel.[5] Veteto's report on the status of discovery indicated, among other things, that the defendants produced many but not all of the photographs of prison guards assigned to Lewisburg in 1985. Veteto admitted that his interrogatories had been answered, but maintained that the interrogees were evasive and nonresponsive, which necessitates that he take depositions from the interrogees. Defense counsel, he claims, agreed to allow the depositions of Warden Miller, as well as Miller's paralegal and the corrections officer who supervised the administrative detention unit in 1985.

On December 31, 1991, the court ordered the parties to appear in chambers for a pre-trial/case management hearing. The order directed the parties to be prepared to discuss all aspects of the case and informed them that "Fed.R.Civ.P. 16 allows the court to simplify the issues, avoid unnecessary proof and cumulative evidence, identify witnesses and eliminate frivolous claims or defenses. Consequently, certain issues may be eliminated and/or the entire case may be dismissed. Also, ripe motions will be considered." Document 123 of record. In a separate letter, the court advised Veteto that at the hearing he should be prepared to state "exactly what you hope to prove" against the defendants, "that is, to describe the conduct you say they were involved in that you claim violated your rights or some law." Document 124 of record. *See Stackhouse v. Marks*, 556 F.Supp. 270 (M.D.Pa.1982).

The hearing proceeded as scheduled on January 30, 1992, and the court questioned Veteto at length and allowed both him and counsel for the defendants to offer argument about all aspects of the case. At the close of the hearing, the court directed Veteto to file a brief addressing the defendants' motion to dismiss the second amended complaint and to identify, as clearly as possible, what claims he expected to prove either on the basis of that complaint or by amendment. After receiving an extension of time in which to do

**4.** The motion for recusal amounts to little more than a series of disparaging, disrespectful comments, none of which merit repeating here, about the court's alleged bias and prejudice against Veteto. The court has neither the time nor the desire to address such baseless allegations. Moreover, Veteto should know from prior experience that a court's rulings in a particular case will not support a request for recusal. *United States v. Veteto*, 701 F.2d 136, 140 (11th Cir. 1983). Rather, recusal is only appropriate when it appears a judge has "bias generated from a source outside the context of the judicial proceeding." *Id.*

**5.** The motion regarding access to case law decisions is based upon the allegation that McKean "does not have any reporter services that report decisions, interpretations and applications of the Federal Rules of Procedure and, especially, the rules of discovery." Document 122 of record, page 9. Veteto argues he can not proceed with

this case effectively without access to certain civil procedure manuals or the appointment of counsel. Veteto made a similar motion earlier, which the court denied without an opinion. Document 114 of record. The second motion is also meritless. First of all, Veteto has not persuaded he court that he will suffer serious prejudice unless he has specialized legal manuals to assist him in prosecuting this case, and there are no allegations that the prison law library at McKean is generally insufficient to suit Veteto's needs. Moreover, the appointment of counsel is clearly unnecessary because Veteto has not demonstrated "special circumstances indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court." *Smith–Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir.1984). Finally, the court's liberal construction of *pro se* filings renders the relief requested unnecessary.

so, Veteto submitted a "brief regarding pre-trial hearing."

Though the court permitted Veteto to use the brief as a vehicle to clearly define the nature of his claims against the defendants, he stated very little, if anything, about the specific nature of his alleged injuries or how he attempted to prove them. Like many of Veteto's submissions, the brief is a rambling, confusing document, riddled with bitter language, legal conclusions and misstatements of fact. Five full pages are devoted to subject matter jurisdiction, which is not an issue. The brief also describes incidents of retaliation, none of which are either legally compelling or related to the allegations made in any of Veteto's three complaints. Veteto argues in the brief, as he has throughout this lawsuit, that his discovery efforts have been unsuccessful because the defendants are evasive and refuse to respond to reasonable discovery requests in a manner consistent with the Federal Rules of Civil Procedure. He claims that even though he "has not been able to get any of the prison guards and employees to admit involvement in their answer to the interrogatories, this does not translate into being unable to show their involvement." Document 135 of record, page 9.

### Motion to Dismiss for Failure to State a Claim

■■■ When considering a motion to dismiss for failure to state a claim, the court is obligated to construe the allegations in the plaintiff's complaint liberally in favor of the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965); *Sturm v. Clark,* 835 F.2d 1009 (3d Cir.1987). Therefore, a complaint should never be dismissed for failure to state a claim unless the court is convinced beyond a doubt that the plaintiff can not prove any set of facts to support a claim

which would permit a recovery. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *District Council 47 v. Bradley,* 795 F.2d 310 (3d Cir.1986). Furthermore, uncounseled litigants like Mr. Veteto are entitled to an even greater degree of deference when the sufficiency of their pleadings is called into question. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)

### I. *Warden Miller*

■■■ The defendants argue that Miller must be dismissed because there are no specific allegations against him in the second amended complaint and the doctrine of *respondeat superior* is an insufficient basis to hold a defendant liable for constitutional rights violations. Though neither the Supreme Court nor the Third Circuit has ruled specifically on the applicability of *respondeat superior* to Bivens suits, most courts considering the issue have borrowed principles from litigation arising under 42 U.S.C. § 1983 and not recognized vicarious liability in Bivens cases. *See Dean v. Gladney,* 621 F.2d 1331, 1334 (5th Cir.1980) (citing cases). It appears highly unlikely that the Third Circuit would allow Bivens plaintiffs to use theories of recovery unavailable in § 1983 litigation[6]; thus, until a court of binding authority directs otherwise, § 1983 principles will be applied to Bivens claims filed in this court.

■■■ Accordingly, the argument that Veteto can not recover against Miller solely on the basis of his status as Lewisburg warden during the time period in question is well-taken. Even if the other defendants were identified and a verdict were returned against them, Miller's mere failure to act in the face of an unconstitutional act committed by one or more of his subordinates can not be a basis for the imposition of civil rights liability. *See Rizzo v. Goode,* 423 U.S. 362,

---

**6.** *See Schrob v. Catterson,* 948 F.2d 1402, 1408 (3d Cir.1991) ("courts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a Bivens claim against federal officials"); *Paton v. LaPrade,* 524 F.2d 862, 871 (3d Cir.1975) ("Be-

cause a Bivens-type cause of action is the federal counterpart to claims under 42 U.S.C. § 1983, we believe that standards for determining injuries developed in § 1983 litigation are applicable in this context.").

376, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976). And while a supervisory official "may not with impunity maintain a custom, practice or usage that communicate[s] condonation or authorization of" unconstitutional behavior, *see Stoneking v. Bradford Area School District,* 882 F.2d 720, 730 (3d Cir.1989), there are no allegations in the second amended complaint from which one could reasonably infer that the acts allegedly committed against Veteto were part of an established practice at Lewisburg to deprive inmates of access to the courts or otherwise subject them to unconstitutional conditions. Likewise, there is no specific information in the complaint that indicates Miller knew about and acquiesced in the conduct attributed to the unidentified defendants, whether such conduct is characterized as established practice or an isolated, unconstitutional event. *See Gay v. Petsock,* 917 F.2d 768, 771 (3d Cir.1990).

█ The only portion of the second amended complaint that implicates Miller in any actual conduct states that "Veteto repeatedly requested administrative remedy forms from the defendant-respondent Miller and other defendants-respondents with no response or success." Document 66 of record, page 3. This is not a viable claim in and of itself, however, as federal regulations providing for an administrative remedy procedure do not create a protected liberty interest in access to that procedure. *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Flanagan v. Warden, United States Penitentiary,* 784 F.Supp. 178, 181 (M.D.Pa.1992). Therefore, the defendants' motion to dismiss for failure to state a claim against defendant Miller will be granted.

## II. *The Unidentified Defendants*

The substantive allegations in the second amended complaint are as follows:

While confined in the Administrative Detention and Disciplinary Segregation Units in the U.S. Penitentiary, Lewisburg, Pennsylvania, from May 29, 1985, until July 29, 1985, Veteto suffered the following injuries, torts and violations of his civil and constitutional rights. The defendants-respondents conspired together and did deprive Veteto of his right to petition the government for redress of grievances and of effective access to the courts by denying him pencil, pen, typewriter, paper, envelopes, stamps, access to the Federal Supplements (West), Federal Reporter, 2nd Series (West), Supreme Court Reports (Lawyers Cooperative) and legal research aids such as the Federal Practice Digest and Shepards Citations, Black's Law Dictionary, Webster's Dictionary, Federal Practice Digest (West), Moore's Federal Practice and the Criminal Law Reporter, all of which are available at the U.S. Penitentiary, Lewisburg, Pennsylvania, by confining him in the AD/DS Unit and refusing to either provide him with the above or else allowing him to go to where the above were located. Veteto had to borrow pencil, paper, stamps and envelopes for writing and sending the original complaint.

Veteto had an appellant brief that was due June 22, 1985, in the United States Court of Appeals for the Eleventh Circuit that he could neither research nor type due to the illegal confinement and denial of legal research materials.

Veteto had civil actions besides his criminal appeal that required his legal material and property before he could properly and adequately marshal the facts and indite the briefs and other pleadings and documents. The defendants-respondents conspired together and stole, destroyed and otherwise rendered unavailable his legal material and property.

Veteto repeatedly requested administrative remedy forms from the defendant-respondent Miller and other defendants-respondents with no response or success.

The defendants-respondents have deprived Veteto of meals, clean clothes, showers and recreation periods that are specifically prescribed by the Code of Federal Regulations and the U.S. Bureau of Prisons Policy and Program Statements.

Document 66 of record, pages 2–3. Construing the second amended complaint with the deference owed to *pro se* litigants, the claims contained therein implicate three constitutional rights: (1) the right of access to the courts, (2) the right to be free from cruel and

unusual punishment while incarcerated, and (3) due process.

 The second amended complaint must be viewed in the context of pleading standards developed by the courts, which require that allegations against civil rights defendants be made with a fair degree of precision so that the court can sort out claims that may be frivolous and those that should be heard in other fora. *See Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976). Furthermore, a complaint can not withstand a motion to dismiss if the claims consist of no more than bald allegations and sweeping conclusions. To survive a motion to dismiss, a civil rights plaintiff must state with particularity the conduct alleged to have caused the constitutional deprivation, the time, the place and the persons responsible. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir.1988), citing *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir.1978). This requirement is designed to give defendants sufficient notice of the claims asserted against them so that an adequate answer can be framed. *Frazier v. Southeastern Pennsylvania Transportation Authority*, 785 F.2d 65, 67 (3d Cir.1986).

 The specificity requirement must be enforced with particular vigor where a conspiracy to deprive an individual of his constitutional rights is alleged. There must be, at a minimum, some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. In the Eighth Circuit, for example, in order for a civil rights conspiracy claim to be sufficiently specific:

> [t]he factual basis need not be extensive, but it must be enough to avoid a finding that the suit is frivolous. [Citation omitted.] (Plaintiffs) must at least allege that "the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding," and provide some facts "suggesting such a 'meeting of the minds.'" [Citation omitted.]

*Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir.1985). *Also see Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir.1987) (teacher's civil rights conspiracy claim against city school officials dismissed where no particular overt acts in furtherance of conspiracy alleged); *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir.1989) (custodial parent's civil rights complaint that his childrens' mother conspired with social workers to deprive him of custody of his children failed to state a claim where, among other things, no specific facts alleged showed an agreement or meeting of the minds); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir.1989) (where prisoner alleges prison officials conspired to deprive him of constitutional rights, no valid civil rights claim stated without allegations of specific facts showing agreement and concerted action among defendants). Because Veteto alludes to conspiratorial conduct, but does not describe it with any particularity, he has not stated a valid claim that the defendants conspired to deprive him of his civil rights. The degree to which the second amended complaint illustrates nonconspiratorial unconstitutional conduct is considered below.

## A. Access to the Courts

In *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. Because the right of access to the courts may not always be guaranteed by the mere availability of legal assistance, the courts have applied *Bounds* to "claims involving policies or prison rules relating to matters other than use of the prison law library and legal clinics and the availability of attorneys". *Peterkin v. Jeffes*, 855 F.2d 1021, 1039 (3d Cir.1988). *See Kershner v. Mazurkiewicz*, 670 F.2d 440 (3d Cir.1982); *Hudson v. Robinson*, 678 F.2d 462 (3d Cir.1982).

 The courts have also recognized that an inmate has a limited right to retain "legal materials" in his possession in order to exercise his right to access the courts. *Roman v. Jeffes*, 904 F.2d 192, 194 (3d Cir. 1990). "[C]ore legal materials, [i.e.,] legal research notes, copies of orders issued in the

cases in which [an inmate] is involved or pleadings filed by opposing parties ... [are] central to his right of access to the courts". *Id.* at 198. Thus, a denial of access to core legal materials may, depending on the circumstances, constitute constitutional injury in and of itself. Where, however, a prisoner alleges he was deprived of legal materials along the order of "his personal store of pens, pencils and writing papers, he must also show 'actual injury' in order for the complaint to proceed." *Id.*, citing *Kershner v. Mazurkiewicz*, 670 F.2d at 445. *See Hudson v. Robinson*, 678 F.2d at 466 (where prisoner alleges denial of access to the courts for reasons unrelated to the adequacy of the prison law library or alternative sources of legal knowledge, "it must first be shown that the proceeding involves access to the courts and that some actual injury, that is, an instance in which an inmate was actually denied access to the courts, has occurred.") (citations and quotations omitted). Actual injury sufficient to sustain a cause of action for denial of access to the courts is present where, for example, an inmate deprived of legal materials is unable to meet court imposed deadlines as a result of the deprivation. *Roman v. Jeffes*, 904 F.2d at 198.

▆ Viewing the pleadings in the light most favorable to Veteto, his access to the courts claim barely survives the motion to dismiss. He alleges, though unartfully, a deprivation of both core legal materials ("Veteto had civil actions besides his criminal appeal that required his legal material and property before he could properly and adequately marshal the facts and indite the briefs and other pleadings and documents"),[7] nonessential legal items ("pencil, pen, typewriter, paper, envelopes, stamps"),[8] and injury resulting therefrom ("Veteto had an appellant brief that was due June 22, 1985, in the United States Court of Appeals for the Eleventh Circuit that he could neither research nor type due to the illegal confinement and denial of legal research materials.").[9] On the basis of the second amended complaint alone, without taking other portions of the record into consideration, the court concludes that Veteto has stated an arguably meritorious access to the court claim.

The court is compelled to note, however, that the second amended complaint is terribly unspecific. Veteto has had four opportunities to present his claims to the court and the defendants (two by amendment, one in the brief) and we know nothing more about his case from the second amended complaint than we did in 1985 from his original pleading. Had the court not disposed of the case for the reasons stated below, Veteto would be required to file a third (and final) amended complaint, identifying more specifically the character of the legal materials allegedly withheld, the identity and the result of the Eleventh Circuit case he referred to, the identity and result of the other civil actions he referred to, and whether he had any access to the prison law library or his legal materials during the period in question.

### B. Eighth Amendment

▆ Veteto's claims regarding the denial of meals, clean clothes, showers and recreation periods must be dismissed. These conditions of Veteto's confinement can not be said to have constituted cruel and unusual punishment, either alone or in the aggregate[10], especially when one considers the relatively brief duration of his assignment to the administrative detention unit. *See Bell v.*

---

7. *See* Document 66 of record, ¶ 7, page 3.

8. *See* Document 66 of record, ¶ 5, page 2.

9. *See* Document 66 of record, ¶ 6, page 3.

10. The Supreme Court has noted that

[s]ome conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.... To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists....
*Wilson v. Seiter*, — U.S. —, —, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991).

*Wolfish,* 441 U.S. 520, 541–43, 99 S.Ct. 1861, 1875–76, 60 L.Ed.2d 447 (1979); *Harris v. Fleming,* 839 F.2d 1232, 1234 (7th Cir.1988) (state inmate deprived of soap, toothpaste and toothbrush for twenty-eight days suffered no violation of constitutional rights because he experienced no physical harm and conditions were temporary). Importantly, Veteto does not depict a scenario in which Lewisburg officials failed to provide him, at least in the constitutional sense, with basic, identifiable human necessities. He claims he was denied meals, clean clothes, showers and recreation periods, but not that he went hungry or lived in an unsanitary, wholly sedentary environment. Lewisburg is a maximum security federal penitentiary, not a restaurant, a haberdashery or a health spa. Therefore, the admittedly uncomfortable conditions nebulously outlined by Veteto do not, by themselves, articulate a situation that could be fairly characterized as cruel and unusual punishment. As the Supreme Court stated in *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), "the Constitution does not mandate comfortable prisons, and prisons ... which house persons convicted of serious crimes, can not be free of discomfort." *Id.* at 349, 101 S.Ct. at 2400. Moreover, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399.

■ A claim based upon the right to be free from cruel and unusual punishment while incarcerated has both objective and subjective components, and the second amended complaint fails to delineate the existence of either element. *See Wilson v. Seiter,* ── U.S. ──, ──, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). A serious deprivation—which Veteto has not alleged for the reasons already stated—is required to satisfy the objective component. *Id.* The subjective component is met if the person or per-

sons causing the deprivation acted with "a sufficiently culpable state of mind", *id.,* which is not present unless the defendant's conduct involved "unnecessary and wanton [11] infliction of pain". *Id.,* citing *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *see Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977); *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976); *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). Simply put, the subjective component is also lacking because there is no indication that the conditions complained of were either intentionally inflicted by the defendants as a means of punishment or allowed to exist because of their deliberate indifference.

## C. Due Process

■ Inasmuch as the complaint can be read to claim violations of one or more constitutionally protected liberty interests, those claims must be dismissed as well. Liberty interests may arise from the constitution itself, statutes, judicial decrees or regulations. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In order to claim a valid liberty interest, however, a legitimate claim of entitlement to a benefit must exist, not a mere unilateral expectation. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Though the Fourteenth Amendment generally confers a liberty interest in receiving *adequate* food, shelter, clothing and medical treatment on persons in government custody, *see Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the court is not acquainted with any standard, constitutional or otherwise, that guarantees prison inmates *specific quantities* of food, clothing, grooming items or recreation. Rather, the law only instructs Bureau of Prisons personnel to pro-

---

**11.** Wantonness "does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'" *Wilson v. Seiter,* ── U.S. at ──, 111 S.Ct. at 2326, quoting *Whitley v. Albers,* 475 U.S. at 320, 106 S.Ct. at 1084. Likewise, whether the wrong-

doing is objectively harmful enough to establish a constitutional violation, is both "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian,* ── U.S. ──, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

vide "suitable" living arrangements for federal prisoners. *See* 18 U.S.C. § 4042, 28 C.F.R. § 547, 551. Furthermore, even if Veteto has a protected liberty interest in any of the alleged deprivations, his vague, conclusory allegations do not portray a situation where Lewisburg officials violated his rights by acting outside the scope of their official discretion. *See Vitek v. Jones,* 445 U.S. 480, 488–91, 100 S.Ct. 1254, 1261–63, 63 L.Ed.2d 552 (1980).

### Veteto's Motions to Compel and Failure to Identify Doe Defendants

■ Veteto claims in several motions to compel that he is entitled to additional discovery he requested but was withheld by counsel for the defense. Though his arguments are sprawling and difficult to tie down, it is apparent Veteto believes the interrogatory answers provided by Lewisburg employees were evasive and nonresponsive, that he is entitled to various prison manuals, and that he should be permitted to depose both the individuals already interrogated as well as twenty more who have not been served with interrogatories. Chief among the items Veteto has moved the defendants to compel are the names, social security numbers and photographs of all persons employed at Lewisburg in 1985, the titles of all civil actions taken against Lewisburg and its employees by inmates from 1983 through 1987, copies of all administrative complaints and grievances taken against Lewisburg employees in the same period, and various Bureau of Prisons and Lewisburg penitentiary manuals related to training and procedure.

Having reviewed the arguments related to the outstanding discovery requests and Veteto's motions to compel, the court finds that defendants' counsel have acted reasonably and well within the bounds of legitimate discovery practice. A substantial quantity of the material sought by Veteto, among which are many photographs of corrections officers employed at Lewisburg in 1985, has already been produced. Moreover, the court examined the contested interrogatory answers at the January 30 hearing and found them to be appropriate responses to the questions as Veteto framed them. The court also agrees with counsel for the defendants that Veteto is improperly insisting on information that has very little to do with the allegations in his second amended complaint. Though the scope of discovery is generally quite broad, the court can not see, for example, how prison training manuals or the identities of other lawsuits and grievances filed by Lewisburg inmates can assist Veteto in proving the allegations of injury to himself made in the second amended complaint. Accordingly, Veteto's motions to compel will be denied.

■ The court also finds that Veteto's failure to identify the Doe defendants despite the extensive discovery undertaken compels their dismissal from this case. *See Scheetz v. Morning Call, Inc.,* 130 F.R.D. 34, 36–37 (E.D.Pa.1990). Though this lawsuit is now many years old and extensive, meaningful discovery has been under way for a considerable length of time, Veteto has neither identified a single individual alleged to have violated his constitutional rights, nor has he demonstrated that further discovery is likely to be successful in that regard. Thirty-three present or former Lewisburg corrections officers responded to interrogatories, and none of them have claimed knowledge of or involvement in the conduct described in the second amended complaint. The defendants also produced many relevant documents for Veteto's inspection and photographs of individuals employed as Lewisburg officials in 1985, but this information has likewise failed to reveal the identity of even one Doe defendant. In the court's judgment, the government has responded appropriately to Veteto's considerable, though ultimately unsuccessful, discovery requests. Because it now appears that there is no reasonable likelihood Veteto can properly identify the unnamed individuals alleged to have violated his constitutional rights through additional discovery,[12] the Doe defendants will be dismissed.

---

12. Veteto's discovery strategy principally, though not exclusively, involved obtaining and inspecting photographs of individuals employed at Lewisburg in 1985 in order to jog his own memory and interrogating Lewisburg employees in an effort to get them to admit any involvement in the alleged constitutional violations. No at-

### Veteto's Demonstrated Inability to Make Out a Constitutional Case

Even if Veteto could identify the Doe defendants, the court is convinced by the plaintiff's own frank admissions at the January 30 hearing and the brief he submitted thereafter that he is incapable of constructing a constitutional case. The court questioned Veteto extensively about every aspect of his lawsuit, i.e., what he expected to prove specifically, and how he expected to prove it. The content and manner of his responses compel a determination at this stage of the proceedings that Veteto can not establish that either Miller or the unidentified defendants violated his constitutional rights.

 At the hearing, Veteto freely admitted that he is a prolific writer, and that as a result he can, and does, wear out the sharpened lead in a pencil in ten minutes or less. He complained that Lewisburg guards would not permit him to sharpen his pencils often enough, which at times caused him to lose his train of thought while working on legal projects. He generally admitted to receiving writing supplies, however, and that he was able to borrow pencils and paper from other inmates on occasion when he had exhausted his own supply. The deprivation of writing materials described by Veteto was, if not *de minimis,* certainly not constitutional in dimension. First of all, Veteto admitted he consumed the materials rapidly due to his own penchant for writing and extensive involvement in litigation. As counsel for the defendants argued, the Lewisburg officials have an obligation to provide writing instruments to all the inmates in their care, and inordinate amounts of supplies can not be furnished to a few inmates at the expense of depriving others. Moreover, the defendants' refusal to provide him with a pencil sharpener is easily justifiable as a security measure designed to prevent the introduction of potential weapons into the inmate population. Most importantly, however, when the court questioned Veteto in detail about his claim that the unavailability of legal materials and opportunities for research at Lewisburg ultimately resulted in a decision adverse to him in a case pending in the Eleventh Circuit, he could neither remember what case it was nor whether the allegedly adverse decision was based upon the merit's or some type of procedural default occasioned by his inability to communicate with that court. He also admitted to requesting and receiving an extension of time in which to file the Eleventh Circuit brief he referred to in the second amended complaint.[13] In the brief filed subsequent to the hearing, Veteto provided no details of the adverse decision in the Eleventh Circuit. Rather, he bluntly stated that he "will not even give credence to the ridiculous argument that no actual injury has been shown", Document 135 of record, page 13, despite the

tempted method of identification has been successful to date.

Given, among other things, the lapse of time between the alleged constitutional violations and the present, the number of prisoners going in and out of Lewisburg, the relatively brief duration of Veteto's stay at Lewisburg, and the number of prisons in which Veteto has been incarcerated both before and after 1985, it is extremely unlikely from a human standpoint that Veteto will be likely to recall the identity of any Doe defendants unless they admit involvement in the conduct alleged. For the same reasons, it is difficult to see how prison officials allegedly involved in such conduct could recall the specifics of their contact with Veteto now, almost seven years later.

13. When the court questioned Veteto about the nature of his alleged inability to file a brief in the Eleventh Circuit case, the following discussion took place:

MR. VETETO: Okay. I couldn't do the brief. I did not do the brief, didn't get, I'll say minimal, I mean very minimal work done on this brief the entire time, which was two months. And as anybody knows, the time limit usually for briefs is about 40 days and this appeal was pending. I did get an extension of time. But even with the extension of time, I still was—couldn't get anything done until I actually got out of the AD Unit. And I did the majority of my work after I got out of the unit.

THE COURT: What happened?

MR. VETETO: And I lost them, of course.

THE COURT: Was the appeal filed on briefs?

MR. VETETO: Yeah.

THE COURT: You filed your brief and the other side filed theirs?

MR. VETETO: Yes.

THE COURT: And then that Court issued some decision?

MR. VETETO: Yeah, they issued a decision. I know it was negative. I can't remember anything about the opinion.

*See* Transcript of Case Management Hearing, Document 139 of record, pages 50–51.

court's prior instructions to state exactly what he expected to prove in his brief.[14] Thus, no matter how much discovery is allowed in this case, the court must conclude that Veteto can not demonstrate that he was actually injured by the defendants' failure to provide him with nonessential legal materials.

The same can be said for his claims about food, clothing, showers and recreation. In the course of the entire case, Veteto has not offered one kernel of information that adds any detail to the claimed deprivation of food, showers and recreation. With regard to the clothing issue, he basically stated at the hearing that it was sometimes difficult to obtain clothes that fit properly and that he didn't get clean clothes as often as he'd like, but made no allegations that even approach constitutional concerns. Indeed, he admitted that the clothing claim did not implicate the Eighth Amendment.[15]

■■■■ Veteto also completely undermined the facially strongest suit in his hand, the claim that he was unconstitutionally denied access to the law library. There is nothing of substance on the issue in his brief. And though he disputed the overall accuracy of the log book which indicated his presence at the prison law library on many occasions, he candidly admitted at the hearing that he visited the library several times during the period in question.[16] While the days and hours of Veteto's library use are admittedly unknown, his own comments lead to the inescapable conclusion that he was permitted to utilize the library to an extent that renders his access to the courts claim completely inviable. Veteto's subjective belief, undoubtedly influenced by his litigious nature, that he was entitled to more frequent and longer library visits is of no moment. The constitution does not require unlimited prison law library access, only objectively meaningful access. *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir.1991). Furthermore, the fact that Veteto was permitted to use the law library requires that he demonstrate some sort of injury to make out a claim that his opportunities for legal research fell below constitutional minima. As already noted, he has no injury to prove.

■■■■ As is the case here, the court is often faced with the difficult task of attempting to discern whether the conduct of prison officials violates the retained constitutional rights of an inmate or whether legitimate prison policy justifies limitations on those rights. One of an incarcerated person's most important retained rights is access to the courts. The right of access to the courts "must be freely exercisable without hinderance or fear of retaliation". *Milhouse v. Carlson*, 652 F.2d 371, 374–75 (3rd Cir.1981). *See Newsom v. Norris*, 888 F.2d 371, 377 (6th Cir.1989); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989); *Franco v. Kelly*, 854 F.2d 584 (2nd Cir.1988); *Adams v. James*, 784

---

14. Near the close of the hearing, the following discussion took place:

THE COURT: Instead of filing another amended complaint, I want you to indicate in this brief, as we're calling it, what amendments you propose that you could make that would make the complaint a sustainable complaint. Do you understand what I mean by that?

MR. VETETO: Exactly.

THE COURT: I agree with you, there's no use filing another complaint. We've discussed this case now at great length today. I think both sides have a better idea of a lot of things. Whether or not these things separately or in totality end up in a viable complaint is something we want to now face. So I want you to address those and address to me not a new amended complaint, but what you say you could do in an amended complaint or want to do, and then I'll give them a chance to respond to that.
*See* Transcript of Case Management Hearing, Document 139 of record, pages 118–19.

15. At the hearing, Veteto stated that "[t]he system that they were using up there at the time it was impossible for a person to get clean clothes. And as far as the extent of not being able to get clean clothes, reaching the point of cruel and unusual punishment, I'm certainly not going to sit here and try to make that claim. *See* Transcript of Case Management Hearing, Document 139 of record, page 40.

16. In response to the court's question whether he denied being in the law library at times the log book indicated he was there, Veteto stated that "I'm denying some of the times and I'm admitting some of the times. So it's not a complete one way or the other. I was in the law library sometimes, but not all the times indicated." *See* Transcript of Case Management Hearing, Document 139 of record, page 60.

F.2d 1077, 1082 (11th Cir.1986). The court both recognizes and respects a prisoner's right to access the courts, and the great number of cases that emanate from our penal institutions—more than several of which Veteto has filed—offer some encouragement that judicial enforcement of the right of access to the courts makes that right a reality and not merely a theory for most inmates.

Like anything else, however, the constitutional right to access the courts can be misunderstood by a prisoner who thinks that corrections officials should be at his beck and call to the detriment of other prisoners attempting to protect their own rights and contrary to the rules of the institution. Prison officials are entrusted with the unenviable task of fairly apportioning writing supplies, guards' time and use of the prison law library in order to make the right of access to the courts meaningful for all the inmates assigned to their custody. Here, the constitutional sufficiency of the Lewisburg officials' execution of that obligation turns on a question of extent, for it is beyond doubt that Veteto was provided writing supplies and opportunities for legal research. In the court's view, Veteto's expansive interpretation of his right to access the courts led him to expect, among other things, too many pencils, too much paper, and an inordinate amount of time in the prison law library. Nonetheless, the assistance Lewisburg officials did provide was ultimately sufficient for his needs and played no role in an injury of constitutional proportions.

In conclusion, the court notes that there is some indication in Veteto's brief that he desires to use this case as a platform to complain of alleged ongoing constitutional rights violations at Lewisburg, or possibly convert the matter into a class action contesting almost all of the disciplinary procedures employed at Lewisburg.[17] For instance, he claims that he has been committed to Lewisburg on several occasions since 1985 and that he can never obtain administrative remedy forms. He also alleges incidents of retalia-

tion via unnecessary security measures taken against him by Lewisburg officials as a result of his participation in this case. As pleaded, however, this lawsuit is only concerned with the conduct of Lewisburg officials directed at Veteto between May 29, 1985 and July 29, 1985. Veteto has filed three complaints, and in each one, he referred only to his treatment at Lewisburg during that period. In fairness to the defendants, he may not, as he desires, conduct additional discovery and then "make final amendments to his original complaint wherein all defendants will be named and any additional claims for relief and factual allegations will be included." Document 135 of record, page 13. There has been ample opportunity for Veteto to add some detail to the very sketchy claims he levied in 1985 against his jailers and to marshal evidence in support of those claims. This case has survived almost seven years on the basis of nothing more than bald accusations, and it would be patently improper to breathe new life into an inviable complaint by permitting Veteto to change its entire character at this juncture.

### Summary

For the reasons stated above, the court will grant the defendants' motion to dismiss the second amended complaint on all claims except Veteto's claim that he was denied access to the courts. The complaint against Warden Miller is dismissed for the additional reason that the allegations against him are based solely upon *respondeat superior*, a theory of recovery unavailable in civil rights actions.

In addition, the entire action will be dismissed for two reasons. First, Veteto has failed to name a single unidentified defendant, despite the fact that government attorneys have responded adequately to his numerous discovery requests. Secondly, neither Veteto's candid testimony at the January 30, 1992 case management hearing nor the brief he subsequently submitted demonstrate that he is capable of proving facts that

---

17. At the hearing, Veteto stated that "I decided not to dismiss this case and to continue it, even though really there's no way I'll gain any benefit from anything that happens from this case because I'm scheduled to go home this year and

any injunctive relief, which is all I really expect to get out of it, if I get that, would be for somebody else not for me. *See* Transcript of Case Management Hearing, Document 139 of record, page 21.

could support a verdict in his favor on his access to the courts claim.

## ORDER

AND NOW, THIS 1ST DAY OF JULY, 1992, IT IS HEREBY ORDERED AS FOLLOWS:

1. The defendants' motion to dismiss for failure to state a claim upon which relief can be granted, Document 67 of record, is granted in part and denied in part. The motion is granted with respect to all claims except the plaintiff's alleged denial of access to the courts.

2. Warden Miller is dismissed for the additional reason that the claims made against him are predicated solely upon *respondeat superior.*

3. The plaintiff's motions for recusal, for access to case decisions, and to compel discovery are denied.

4. In addition, the entire action is dismissed for the reasons stated in the accompanying memorandum.

5. The Clerk of Court is directed to close this file.

## ORDER ON RECONSIDERATION

This is a Bivens-type [1] civil rights action filed by Ronald D. Veteto, an inmate at the McKean Federal Correctional Institution, Bradford, Pennsylvania. Veteto filed the complaint in 1985 while he was incarcerated at the federal penitentiary in Lewisburg, Pennsylvania. He alleged principally that unnamed Lewisburg prison officials and the Lewisburg warden conspired to deny him an effective means of access to the courts while he was confined in the Lewisburg administrative detention unit for several months in 1985. Veteto also alleged he was denied meals, clean clothes, showers and recreation periods prescribed by both federal regulations and the Bureau of Prisons' internal policy. After a lengthy procedural history that included two successful appeals by the plaintiff, the court dismissed this case by Memorandum and Order dated July 1, 1992.

This matter comes before the court on Veteto's motion for reconsideration of the court's order of dismissal. For the following reasons, the motion will be denied.

The procedural history of this case has been stated previously and is only repeated here to the extent necessary. It should suffice to note that while the defendants' motion to dismiss the second amended complaint for failure to state a claim was pending, the court ordered the parties to appear in chambers for a pretrial/case management hearing. The order directed the parties to be prepared to discuss every aspect of the case and advised them that "Fed.R.Civ.P. 16 allows the court to simplify the issues, avoid unnecessary proof and cumulative evidence, identify witnesses and eliminate frivolous claims or defenses. Consequently, certain issues may be eliminated and/or the entire case may be dismissed." Document 123 of record. In a separate letter, the court forewarned Veteto that he should be prepared to state at the hearing "exactly what you hope to prove" against the defendants, "that is, to describe the conduct you say they were involved in that you claim violated your rights or some law." Document 124 of record. *See Stackhouse v. Marks,* 556 F.Supp. 270 (M.D.Pa. 1982).

At the hearing, the court engaged in lengthy discussions with Veteto and allowed both him and counsel for the defendants to offer comments and argument about all aspects of the case. At hearing's conclusion, the court directed Veteto to file a brief addressing the defendants' motion to dismiss the second amended complaint and identifying, as clearly as possible, what claims he expected to prove and how he expected to prove them either on the basis of his existing complaint or by amendment. Veteto filed the brief as ordered, but it offered little or nothing about the specific nature of the injuries he alleged or how expected to confirm them. The court subsequently dismissed the case because, among other things, Veteto offered no indication that he was capable of proving any facts in support of his claims

---

**1.** *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

against the defendants despite the fact that the parties have engaged in extensive discovery. His motion for reconsideration followed.

 A motion for reconsideration may be used to remedy manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985); *Massachusetts Mutual Life Insurance Co. v. Maitland,* Civil No. 87–0827 (M.D.Pa. March 1, 1989) (Rambo, J.). Veteto has neither presented newly discovered evidence nor has he demonstrated that the challenged order suffers from a manifestly unjust application of the law. Rather, the motion for reconsideration and supporting brief consist mainly of personal attacks on the court's integrity and conclusory allegations of error in the order of dismissal. As he has throughout the protracted history of this case, Veteto zealously heralds the viability of his allegations without offering one shred of evidence that suggests he has the ability to prove them.

This case has consumed a considerable if not inordinate amount of time and energy for all parties concerned, in large measure due to the plaintiff's contemptuous demeanor and his habit of inundating both the court and the defendants with meritless filings and numerous requests for extensions of time. Nevertheless, the court has afforded every possible measure of deference to Mr. Veteto in his efforts to prosecute this lawsuit and he has been dealt with as fairly and objectively as any other litigant. The court dismissed this action chiefly because Veteto has failed to demonstrate that he has any more of a case against the defendants—all but one of whom remain unidentified—now than he did when he initiated this action more than seven years ago. Because the contents of his motion for reconsideration do not alter this conclusion, the law dictates that the motion must be denied.

AND NOW, THIS 18th DAY OF SEPTEMBER, 1992, IT IS HEREBY ORDERED THAT:

The plaintiff's motion for reconsideration is denied.